6 F.3d 1049
 UNITED STATES of America, Plaintiff-Appellee,
v.
Byron Perrymore NELSON, a/k/a Steve Stevenson, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Donald Anthony NELSON, a/k/a Chris Stevenson, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Talbert Wayne MORGAN, a/k/a Troy Edwards Townes, a/k/a Troy
Edwards, Defendant-Appellant.
 Nos. 92-5227, 92-5264 and 92-5317.
 United States Court of Appeals,
Fourth Circuit.
 Argued April 1, 1993.
Decided Oct. 6, 1993.
 
 Urs Roland Gsteiger, Wilson & Iseman, Winston-Salem, NC, argued, for appellant Morgan.
 Walter C. Holton, Jr., Holton & Menefee, Winston-Salem, NC, argued, for appellant Donald Nelson.
 David Ferris Tamer, Winston-Salem, NC, argued, for appellant Byron Nelson.
 David Bernard Smith, Asst. U.S. Atty., Greensboro, NC, argued (Robert H. Edmunds, Jr., U.S. Atty., on brief), for appellee.
 Before WIDENER, Circuit Judge, CHAPMAN, Senior Circuit Judge, and FABER, United States District Judge for the Southern District of West Virginia, sitting by designation.
 OPINION
 CHAPMAN, Senior Circuit Judge:
 
 
 1
 The three appellants and two codefendants were indicted of possession with intent to distribute crack cocaine in violation of 21 U.S.C. Sec. 841(a)(1) and (b)(1)(A) (Count 1), possession of cocaine hydrochloride with intent to manufacture crack in violation of 21 U.S.C. Sec. 841(a)(2), and (b)(1)(A) (Count 2), and possession of three firearms during and in relation to a drug trafficking crime in violation of 18 U.S.C. Sec. 924(c)(1) (Count 3). Byron Nelson and Donald Nelson were convicted on all counts, and Morgan was convicted on Counts 1 and 2, but acquitted as to Count 3. At sentencing the trial judge enhanced Morgan's base offense level for possession of a firearm during the commission of offenses covered by Counts 1 and 2 pursuant to U.S.S.G. Sec. 2D1.1(b)(1) (1991). Each defendant claims that the evidence was not sufficient to convict him on any of the counts. Morgan argues that the sentencing court erred in denying his motion for a reduction in sentence, because he had a minor role in the offense and that it was error for the court to increase his base offense level for possession of the firearms after the jury had acquitted him on this charge. We affirm each conviction and each sentence. We find no error in the trial court's failure to grant Morgan a reduction because of his claim that he played only a minor role, and we find no error resulting from the 2 level increase in Morgan's base offense level for possession of the firearms, although the jury had found him not guilty of this offense.
 
 I.
 
 2
 At approximately 7:00 a.m. on October 26, 1991, Greensboro police officers arrived at 1717 Grove Street, Greensboro, North Carolina, to execute a search, pursuant to a proper warrant, of the residence located at this address. After announcing their identity and their purpose several times without any response from the occupants of the residence, the officers proceeded to break in the front door with a battering ram. Upon entering the house, the officers proceeded to the master bedroom, which was occupied by four black males, one of whom was attempting to hold the door shut while the other three jumped through a window in a vain effort to escape. Defendant Morgan was chased about three blocks before he was apprehended, defendant Donald Nelson was caught trying to climb a fence wearing only his underwear, and Byron Nelson was arrested at about the same time and place.
 
 
 3
 After the appellants were in custody, the search of the residence proceeded. The officers found $9,900 in currency in the top drawer of the dresser located in the master bedroom. Scattered about the floor of the same room and on the bed were several plastic bag corners cut from sandwich bags which are commonly used to package drugs for sale. There was also a mobile scanner which had been programmed to the Greensboro police frequency so as to allow monitoring of police radio transmissions. A number of documents were seized in the master bedroom, including a First Union Bank savings transaction register in the name of Byron P. Nelson showing a deposit of $383 on May 29, 1991 and a deposit of $111.39 on July 3, 1991; a Dial-A-Page receipt from Dial-A-Page Company, 2881 Emanuel Road, Greensboro, made to Robert Pennix, dated September 3, 1991; a First Union Savings Bank deposit slip dated July, 1991, for $111.39; another Dial-A-Page receipt made to Troy Townes (an alias used by the defendant Morgan), dated August 8, 1991 in the amount of $34.78; another Dial-A-Page receipt made to Troy Townes dated September 3, 1991 for $28.50; a USAir ticket in the name of T. Townes dated August 20, 1991 showing travel from New York City to Greensboro for $276; a copy of a money order paid to Dennan Davidson sent by Donald Nelson, 1717 Grove Street, Greensboro, North Carolina, in the amount of $400 dated October 9, 1991; a Piedmont Natural Gas billing envelope addressed to Byron Nelson, 1717 Grove Street, Greensboro, North Carolina, postmarked June 26, 1991; a bill from Greensboro Radiology Associates dated August 8, 1991 for $23 addressed to Troy Townes, 405 Huntley Court, Greensboro, North Carolina; another Dial-A-Page bill addressed to Troy Townes, 1717 Grove Street, Greensboro, North Carolina, dated August 1, 1991, in the amount of $34.76; a New York State driver's license listed to Talbert W. Morgan, 1633-E 100 72nd Street, PH Bronx, New York, DOB 9/23/64, issued May 20, 1988, depicting a photo of a black male; a Savings of America account book and authorization book in the name of Arlene M. Nelson, 02-93 Bay View Avenue, Far Rockaway, New York; a Citicorp-Citi Bank savings book also in the name of Arlene Mae Nelson; a Southern Bell Telephone bill addressed to Agatha D. Johnson, 1717 Grove Street, Greensboro, North Carolina; a wallet including Social Security card for Troy Townes, a North Carolina driver's license for Troy Townes, 3107 Shallowford Road, Greensboro, North Carolina, issued May 30, 1991, a NationWide insurance card for Troy Townes (same address) issued May 17, 1991, and a temporary registration card for a 1948 Chevrolet registered to Troy Townes (same address) issued May 17, 1991; a wallet seized from a chest of drawers and containing a certified identification for Byron Nelson, 24 Stanley Street, Idlewood, New York, with a photograph showing DOB 2/11/67, Social Security number zba-qa-fnoj a North Carolina identification card for Byron Perrymore Nelson, 3107 Shallowford Road, Greensboro, North Carolina issued May 20, 1991; a resident alien card picturing a young black male with the name of Byron Perrymore Nelson; a First Union receipt showing a deposit on 10/15/91 of $30.08; a Social Security card for Byron P. Nelson, eff-jz-ileq an MCI telephone card in the name of Arlene Nelson, a New York driver's license for Byron P. Nelson, 24 Stanley Street, Idlewood, New York, a Cash Mate Jamaican Savings Bank card in the name of Byron P. Nelson to expire 12/92; a First Union Bank card in the name of Byron P. Nelson to expire 5/94; two Dial-A-Page pagers; two sets of key rings, one with the name "Chris" engraved containing keys to the locks on the front and back doors of 1717 Grove Street, together with keys to a BMW with New York tags and a Toyota.
 
 
 4
 In the living room there were numerous trophies and certificates with the name "Byron Nelson." Behind some books on a book shelf was found a white powdery substance in a plastic bag which tested 91 percent pure crack cocaine weighing 4.94 grams.
 
 
 5
 In another bedroom the officers found Ronnie Fann and Pam Oglesby, both naked, and various airline tickets, receipts, utility bills and other documents in the name of Donald Nelson addressed to 1717 Grove Street, Greensboro, North Carolina, and a distribution size quantity of marijuana in a cereal box.
 
 
 6
 In the dining room and kitchen areas, the officers found two firearms: a loaded TEC-9 millimeter handgun, serial number 55369, and a loaded Smith & Wesson .44 magnum revolver, serial number N702225. Both weapons were out of view on top of the entertainment center. They were test fired and found to be operable. Inside a brown mug in a cupboard the officers found two off white rock substances that were analyzed as crack cocaine, and on the dining room table they found various documents, receipts, bus tickets, USAir boarding passes, five sheets of yellow lined paper bearing drug record notes, and a notice from the Greensboro Water & Sewer Department, all addressed to Byron Nelson or naming Byron Nelson at 1717 Grove Street, Greensboro, North Carolina.
 
 
 7
 The bathroom cabinet underneath the sink also produced a small bag of crack cocaine. The BMW and the Toyota were searched and the BMW contained various documents connecting Byron Nelson and Troy Townes to 1717 Grove Street. The Toyota contained postal service express mail and Western Union money transfer orders in the name of Donald Nelson at 1717 Grove Street. The kitchen area produced crack cocaine residue in a glass coffee pot, a set of scales containing cocaine residue, 125.1 grams of 87 percent pure cocaine base from an overhead cabinet and 254.6 grams of 96 percent pure cocaine hydrochloride in a black leather waist pouch. On top of the counter were a cigar,[1] packaging materials, baking soda, razor blades, a spoon and Ziploc plastic bags, a strainer used in the manufacture of crack from cocaine hydrochloride and a number of bills and documents in the name of Byron Nelson, giving an address of 1717 Grove Street. Directly across the hall from the master bedroom, a .32 caliber semi-automatic pistol and a box containing .44 caliber ammunition was found in a closet. Other identification and documents connecting Donald Nelson to 1717 Grove Street were found in a pair of bluejeans in the den.
 
 
 8
 Byron Nelson told the officers that he had moved from Far Rockaway, New York to his sister's home at 3107 Shallowford Road, Greensboro about a year before being arrested. He said that he had found the TEC-9 handgun lying in some bushes while he was riding his bicycle, but later he admitted that he had lied about the gun and made no further comments about it. Morgan advised the officers that he lived at 3107 Shallowford Road and was merely spending the night at 1717 Grove Street and knew nothing about guns or drugs.
 
 
 9
 At trial several witnesses testified that they had been to 1717 Grove Street in the weeks preceding the search and had met or seen the defendants there.
 
 II.
 
 10
 The defendants concede that the evidence found at 1717 Grove Street established that the house was being used as a base of operations for the manufacture of crack cocaine, but they contend that there was not sufficient evidence to link them to this residence or to the drug operation. In reviewing a conviction for sufficiency of evidence, we must affirm if there is substantial evidence, taking the view most favorable to the government, to support a finding of guilt.
 
 
 11
 Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). After reviewing the evidence in the light most favorable to the government, we must decide if any rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).
 
 
 12
 Counts 1 and 2 charge possession with intent to distribute crack and possession of cocaine hydrochloride with the intent to manufacture crack, both offenses involve the violation of Title 21, United States Code Secs. 812 and 841(a)(1) and (b)(1)(A). The essential elements of these crimes are proof of possession of the controlled substance both knowingly and intentionally with the intent to distribute or to manufacture. United States v. Crockett, 813 F.2d 1310, 1316 (4th Cir.), cert. denied, 484 U.S. 834, 108 S.Ct. 112, 98 L.Ed.2d 71 (1987). Of course, possession may be actual or constructive, and it may be sole or joint. To establish constructive possession the government must show ownership, dominion or control over the drug or the premises or vehicle in which it was concealed. United States v. Blue, 957 F.2d 106, 107 (4th Cir.1992).
 
 
 13
 Constructive possession may be established by either circumstantial or direct evidence. United States v. Laughman, 618 F.2d 1067, 1077 (4th Cir.), cert. denied, 447 U.S. 925, 100 S.Ct. 3018, 65 L.Ed.2d 1117 (1980). A defendant's intent to distribute may be inferred from quantities of drugs too large for personal consumption. United States v. Roberts, 881 F.2d 95, 99 (4th Cir.1989). We have also held that "possession of a large amount of [drugs] among several people working together may be sufficient to show that each had constructive possession." United States v. Watkins, 662 F.2d 1090, 1097-98 (4th Cir.), cert. denied, 455 U.S. 989, 102 S.Ct. 1613, 71 L.Ed.2d 849 (1981).
 
 
 14
 There is abundant direct and circumstantial evidence to prove beyond a reasonable doubt that the three defendants were connected with one another and with the residence at 1717 Grove Street. There was also sufficient circumstantial evidence to prove that each defendant had constructive possession of the cocaine hydrochloride and the crack, and that they intended to manufacture and distribute crack. The various bills, receipts, identification documents, scales, baggies, Dial-A-Page receipts, and police radio scanner clearly showed that Donald Nelson, Byron Nelson and Talbert Morgan were either living in or frequently using the 1717 Grove Street residence at the time of the search, and the house was being used by them for the manufacture of illegal drugs. All three defendants spent the night before the search at this residence and fled half or partially clothed when the police arrived. Evidence of intentional flight by a defendant immediately after the commission of a crime may be considered along with other evidence in determining guilt. United States v. Porter, 821 F.2d 968, 975-76 (4th Cir.), cert. denied, 485 U.S. 934, 108 S.Ct. 1108, 99 L.Ed.2d 269 (1988). There was ample evidence to sustain the jury's verdicts as to Counts 1 and 2 against all appellants.
 
 III.
 
 15
 As to the sufficiency of the evidence on Count 3 (use of a firearm), the evidence placed three firearms in the residence at 1717 Grove Street and clearly established that the residence was being used in a drug trafficking operation. The jury had sufficient evidence to conclude that the firearms were present for protection and to facilitate the likelihood of the success of the operation and that Byron and Donald Nelson had constructive possession of these weapons. This is sufficient under United States v. Paz, 927 F.2d 176, 179 (4th Cir.1991) to establish use of a firearm in relation to a drug trafficking offense. The weapons were located in easily accessible places and close to the crack cocaine. Also, Byron Nelson at first admitted to the officers that he had found the TEC-9 handgun and brought it to the house. Therefore, at one time he admitted having actual possession of this weapon. The TEC-9 and the Smith & Wesson .44 magnum revolver were found to be loaded and located on the top of the entertainment center in the dining room. These weapons were in close proximity to the crack in the living room and also the crack in the kitchen. The other weapon was located in a closet just outside the master bedroom where the money was found. All three weapons were readily accessible so as to protect the defendants and to facilitate the success of their drug business. United States v. Brockington, 849 F.2d 872, 876 (4th Cir.1988). The evidence was sufficient to convict both Byron and Donald Nelson of Count 3.
 
 IV.
 
 16
 (A)
 
 
 17
 Appellant Morgan was acquitted of the charge contained in Count 3. This apparent inconsistency may have resulted from the jury's conclusion that Morgan was not aware that the three weapons were located in the house at 1717 Grove Street, and being unaware of their presence he could not have had constructive possession. Morgan claimed that he did not reside at 1717 Grove Street and that he had the misfortune of being there the morning of the police raid and search. Morgan's wallet, containing a North Carolina driver's license, a social security card, and an insurance card using his alias "Troy Townes" and giving his address as 3107 Shallowford Road, was found in the search, but several Dial-A-Page bills were found which listed Troy Townes' address as 1717 Grove Street. However, the jury acquitted Morgan as to the use of a firearm charged in Count 3.
 
 
 18
 At sentencing, the trial judge agreed with the recommendation of the probation officer and added 2 points to Morgan's base offense level pursuant to U.S.S.G. Sec. 2D1.1(b)(1) (1991) which states: "If a dangerous weapon (including a firearm) was possessed during the commission of the offense, increase by 2 levels." This increase in the base offense level added 57 to 72 months to Morgan's guideline range.[2] Morgan argues that if he had been convicted of the weapons offense, he would have faced only an additional 60 months confinement, and that he faced a longer sentence after his acquittal than he would have faced if he had been convicted. He claims this is a violation of due process and places him twice in jeopardy for the same act, because although he had been acquitted on the weapons possession charge, he still faced this same accusation at sentencing where he received an additional 57 months of incarceration.
 
 
 19
 The government argues that the standard of proof at sentencing is only a preponderance of the evidence and not proof beyond a reasonable doubt, and that there was sufficient evidence of Morgan's possession of the weapons to meet this lower standard. There was no additional evidence presented at sentencing.
 
 
 20
 The evidence against Morgan on Count 3 was circumstantial, and there was no direct evidence that he knew the three handguns were present at 1717 Grove Street. However, the same can be said for the evidence against Donald Nelson. Only Byron Nelson admitted having knowledge of one of the weapons, but as we found in Section III above, the evidence was sufficient to convict both Nelsons on Count 3. If the jury had seen fit to also convict Morgan on this count, the record would support such a finding.
 
 
 21
 The factual findings of the sentencing court are reviewed under a clearly erroneous standard. United States v. Brooks, 957 F.2d 1138, 1148 (4th Cir.1992). The district judge made the following findings of fact at the sentencing hearing:
 
 
 22
 [T]he preponderance of the evidence certainly establishes the presence of the firearms and the likelihood that the defendant was involved with the operation going on at this residence, involved with the drugs in the residence, involved with possession with intent to distribute the drugs in the residence, and involved with the firearms being present at this residence, which were not unloaded in a closet, but were loaded in the common areas of the residence and were certainly not the type of weapons commonly used in hunting, and that the two-level adjustment could be given, resulting in the guideline range found in the presentence report.
 
 
 23
 Because of the significant range that this results in, and to give some recognition of the defendant's acquittal on Count 3, I am inclined to sentence at the low end of those guidelines, the guidelines being 292 to 365 months, and I am sure that this is what the defendant would argue, the low end of any guideline, whatever it is.
 
 
 24
 Joint Appendix, pages 388-389.
 
 
 25
 These findings are not clearly erroneous. The sentencing judge heard all the testimony. The guideline range was determined to be 34 for Counts 1 and 2 after the charges were grouped pursuant to Sec. 3D1.2(d), and this level was increased by 2 pursuant to Sec. 2D1.1(b)(1), which provides:
 
 
 26
 Unlawful manufacturing, importing, exporting, or trafficking (Including Possession with Intent to Commit These Offenses)
 
 
 27
 * * * * * *
 
 
 28
 (b) Specific Offense Characteristics
 
 
 29
 (1) If a dangerous weapon (including a firearm) was possessed, increase by 2 levels.
 
 
 30
 Application Note 3 to Sec. 2D1.1(b)(1) provides:
 
 
 31
 Definitions of "firearm" and "dangerous weapon" are found in the Commentary to Sec. 1B1.1 (Application Instructions). The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet. The enhancement also applies to offenses that reference Sec. 2D1.1, i.e., Secs. 2D1.2, 2D1.4, 2D1.5, 2D1.6, 2D1.7(b)(1). (emphasis added).
 
 
 32
 The sentencing court also considered relevant conduct under U.S.S.G. Sec. 1B1.3(a)(1):
 
 
 33
 (1) all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense;
 
 
 34
 Application Note 1 to this section provides:
 
 
 35
 Conduct "for which the defendant would be otherwise accountable," as used in subsection (a)(1), includes conduct that the defendant counseled, commanded, induced, procured, or willfully caused. (Cf. 18 U.S.C. Sec. 2). In the case of criminal activity undertaken in concert with others, whether or not charged as a conspiracy, the conduct for which the defendant "would be otherwise accountable" also includes conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant. Because a count may be broadly worded and include the conduct of many participants over a substantial period of time, the scope of the jointly-undertaken criminal activity, and hence relevant conduct, is not necessarily the same for every participant. Where it is established that the conduct was neither within the scope of the defendant's agreement, nor was reasonably foreseeable in connection with the criminal activity the defendant agreed to jointly undertake, such conduct is not included in establishing the defendant's offense level under this guideline.
 
 
 36
 The Application Notes under the Sentencing Guidelines are included as Commentary, and in Stinson v. United States, --- U.S. ----, 113 S.Ct. 1913, 123 L.Ed.2d 598 (decided May 3, 1993), the court held: "We decide that Commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline."
 
 
 37
 It is manifest from the above Application Notes that Morgan may be accountable for the conduct of Donald and Byron Nelson if such conduct was in furtherance of the execution of the jointly-undertaken criminal activity and was reasonably foreseeable by Morgan. It is not necessary that a conspiracy be charged or proved. (Application Note 1 to Sec. 1B1.3(a)(1)). The 2 level adjustment for possession of a dangerous weapon is applied "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." (Application Note 3 to U.S.S.G. Sec. 2D1.1(b)(1)). Possession of the weapons by Morgan is not required. The weapons were present at 1717 Grove Street and the jury found beyond a reasonable doubt that Morgan possessed with the intent to distribute approximately 183 grams of crack cocaine and possessed with the intent to manufacture crack cocaine approximately 225 grams of cocaine hydrochloride. Morgan's relevant conduct includes the conduct of the Nelson brothers taken in furtherance of their jointly-undertaken criminal activity, and it was reasonably foreseeable to Morgan that there would be firearms located at 1717 Grove Street because it was a place of manufacturing, storing and distributing crack cocaine. The weapons were present, Morgan and the Nelsons were acting in a "jointly-undertaken criminal activity," the weapons were connected with the offenses charged in Counts 1 and 2, and it was reasonably foreseeable to Morgan that his codefendants would be in possession of a firearm. These circumstances are sufficient to support the 2 level increase. See United States v. White, 875 F.2d 427, 433 (4th Cir.1989). The facts in White were less aggravated than those now before the court. Jackson was a codefendant and coappellant with White and we found:
 
 
 38
 The facts surrounding the apprehension of Defendants are important. Jackson arrived at the train station after midnight, exited the train, greeted White and rode away with him. The pistol under the driver's seat was readily accessible to both. And, as Jackson conceded, he knew White personally and had been involved in at least one previous similar transaction with him. Finally, it is not unreasonable to recognize that weapons have become "tools of the trade" in illegal narcotics operations. United States v. Hinds, 856 F.2d 438, 443 (1st Cir.1988) (quoting United States v. Cresta, 825 F.2d 538, 554 (1st Cir.1987), cert. denied, 486 U.S. 1042, 108 S.Ct. 2033, 100 L.Ed.2d 618 (1988). Therefore, although Jackson's guilty plea was based on an aiding and abetting charge and not on a conspiracy charge, the district court did not err in considering the possession of the weapon for sentencing purposes.
 
 
 39
 875 F.2d at 433.
 
 
 40
 In United States v. Brooks, 957 F.2d 1138 (4th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 3051, 120 L.Ed.2d 917 (1992), we found no error in the enhancement of Brooks' offense level based upon the possession of a firearm by a codefendant where the possession was in furtherance of the conspiracy and reasonably foreseeable to Brooks. Although Brooks involved a drug conspiracy, it is clear from Application Note to Sec. 1B1.3(a)(1) that it is not necessary that Morgan and the Nelsons be charged with conspiracy if the codefendant's conduct is "in furtherance of the execution of the jointly-undertaken criminal activity and was reasonably foreseeable by the defendant."
 
 
 41
 We find that the sentencing court's decision to apply the enhancement under Sec. 2D1.1(b)(1) and its findings of fact is support thereof were not clearly erroneous, and they are supported by a preponderance of the evidence.
 
 
 42
 (B)
 
 
 43
 Appellant argues that the sentencing court's consideration of evidence introduced in support of Count 3, on which he was acquitted, to enhance his sentence on Counts 1 and 2, on which he was convicted, violates his right to due process and places him in jeopardy twice for the same offense. The law is clear that if there is no separate punishment for the acquitted conduct, Morgan does not have a double jeopardy claim. United States v. Boney, 977 F.2d 624, 636 (D.C.Cir.1992). See also United States v. Romulus, 949 F.2d 713, 716-17 (4th Cir.1991). No separate sentence or separate punishment was given to Morgan because of the sentencing court's consideration of his acquitted conduct. This evidence was considered only in determining the point within the statutory and guideline range at which his sentence was to be imposed, and this does not offend the protection against double jeopardy.
 
 
 44
 The use of acquitted evidence at sentencing satisfies due process "so long as the facts necessary for sentencing are proved by a preponderance of the evidence." United States v. Burke, 888 F.2d 862, 869 (D.C.Cir.1989); see also McMillan v. Pennsylvania, 477 U.S. 79, 91-92, 106 S.Ct. 2411, 2418-19, 91 L.Ed.2d 67 (1986); United States v. Urrego-Linares, 879 F.2d 1234, 1239 (4th Cir.), cert. denied, 493 U.S. 943, 110 S.Ct. 346, 107 L.Ed.2d 334 (1989). We have already found that there was a preponderance of the evidence to support the findings made at sentencing by the district court.
 
 
 45
 Consideration of acquitted conduct by the district court to enhance Morgan's sentence under Sec. 2D1.1(b)(1) was not error on the facts in this case. Application Note 3 to this section provides: "The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." (emphasis added). There were three handguns present in the residence that was indisputably used for the manufacture of crack cocaine. It was not necessary that the evidence establish actual or constructive possession of these weapons by Morgan in order that his sentence be enhanced. The weapons were present and Morgan was convicted on the drug offenses contained in Counts 1 and 2, and the district court found by a preponderance of the evidence that Morgan was "involved with the firearms being present at this residence."
 
 
 46
 We have held that acquitted conduct can be considered to enhance a sentence under the Sentencing Guidelines. See United States v. Isom, 886 F.2d 736, 739 (4th Cir.1989); United States v. Johnson, 943 F.2d 383, 386 (4th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 667, 116 L.Ed.2d 758 (1991); United States v. Romulus, 949 F.2d 713, 717 (4th Cir.1991). Such conduct could also be used for the same purpose prior to the guidelines.
 
 
 47
 There is a distinction between a sentence and the enhancement of a sentence. A defendant may not be punished for an extraneous offense for which he was not convicted, but the acquitted conduct may be considered to justify a longer sentence for an offense for which he stands convicted. United States v. Rodriguez-Gonzalez, 899 F.2d 177, 181 (2d Cir.), cert. denied, 498 U.S. 844, 111 S.Ct. 127, 112 L.Ed.2d 95 (1990).
 
 V.
 
 48
 Morgan argues that if he had been convicted of the weapons count, this would have subjected him to only 60 additional months, but using evidence of the weapons to enhance his sentence under Sec. 2D1.1(b)(1) increased his guideline range by 57 to 72 months. The district court sentenced him at the bottom of the guidelines and he has not been harmed. However, the guidelines provide the means for arriving at the sentencing range under the present circumstances, see Application Note 2 to U.S.S.G. Sec. 2K2.4, so the anomaly suggested by Morgan does not take place.
 
 VI.
 
 49
 We find no merit to Morgan's claim that his base offense level should have been reduced because he was a minimal or minor participant in the drug offenses. A defendant seeking a downward adjustment for his minor role in a criminal offense bears the burden of proving by a preponderance of the evidence that he is entitled to such adjustment. United States v. Urrego-Linares, supra, at 1239. Morgan has failed to establish such entitlement.
 
 
 50
 We granted appellant Morgan's motion to file a pro se brief, and we have considered the arguments in his brief and find them unpersuasive.
 
 
 51
 We affirm the convictions and sentences of all appellants.
 
 
 52
 AFFIRMED.
 
 
 
 [1]
 There was evidence that Morgan was smoking a cigar in the kitchen a few hours before the police arrived
 
 
 [2]
 With a guideline range of 292-365 months, the district judge imposed a sentence of 292 months, followed by five years of supervised release