42 F.3d 1386
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Kevin JOHNSON, a/k/a Lion, a/k/a Spotted Lion, Defendant-Appellant.
 No. 94-5093.
 United States Court of Appeals, Fourth Circuit.
 Submitted Sept. 13, 1994.
Decided Dec. 23, 1994.
 
 Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. William L. Osteen, Sr., District Judge. (CR-93-150)
 E. Raymond Alexander, Jr., Greensboro, NC, for Appellant. Walter C. Holton, Jr., United States Attorney, David B. Smith, Assistant United States Attorney, Lisa B. Boggs, Assistant United States Attorney, Greensboro, NC, for Appellee.
 Before HALL, NIEMEYER, and MICHAEL, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Appellant Kevin Johnson appeals from the district court's denial of his Fed.R.Crim.P. 29 motion for acquittal. Finding that substantial evidence supports the jury's verdict, we affirm.
 
 
 2
 Johnson was indicted in a two-count indictment alleging violations of 21 U.S.C.A. Sec. 846 (West Supp.1994) (drug conspiracy) and 21 U.S.C. Sec. 841(a)(1) (1988) (possession with intent to distribute crack cocaine base). Johnson pled not guilty. Following trial by jury, Johnson was found guilty on both counts. At the close of the Government's evidence and again at the end of the trial, Johnson's attorney moved for acquittal pursuant to Fed.R.Crim.P. 29 based on the sufficiency of the evidence. The district court denied both motions. Johnson was later sentenced to a term of three hundred sixty months imprisonment, a five-year term of supervised release, a $5,000.00 fine, and a $100.00 special assessment. Johnson timely appealed.
 
 
 3
 The Government's chief witness was Charles Yourse. Yourse testified that he met Tony Green and someone named "Chris" in 1991 while living with his parents in Greensboro. Yourse moved into an apartment in early 1992, and Chris and his brother, Jay, moved into the same apartment soon thereafter. A man named Lemuel Lott also moved into the apartment in March 1992. Chris and Jay lived with Yourse until June 1993.
 
 
 4
 In April 1992 Yourse discovered that Chris, Jay, and Lott were receiving drugs at the apartment. The drugs arrived in "cookie form", and the housemates would repackage the crack into smaller packages for street sale. While they lived together, Yourse began driving Chris around while Chris delivered drugs. Chris and Lott also paid Yourse rent in the form of crack cocaine.
 
 
 5
 Lott moved out of the apartment in April 1993 upon discovering that Yourse had stolen some of Lott's crack cocaine. However, Lott continued to visit Yourse's residence and brought Appellant Johnson with him as often as five times per week. Yourse overheard Johnson and Green discussing how their sales of crack cocaine would help them escape from financial difficulty.
 
 
 6
 Yourse told Johnson that Lott had alleged that Yourse had stolen Lott's cocaine. Johnson told Yourse that he should not have taken the cocaine from Lott. In May 1993 Yourse asked Johnson if anyone had any crack cocaine for sale; Johnson answered that the group (Jay, Johnson, Lott and Green) was planning to get some the next day and would give Yourse some then. During this time period, Yourse saw Johnson in possession of a nickel-plated pistol.
 
 
 7
 The next prosecution witness, Clyde Barham, testified that he began selling drugs for Green in December 1991. Barham met Lott in 1992 through a drug transaction. Barham saw Lott and Green once or twice a day and purchased drugs from them at restaurants, stores, and at Green's residence. Barham paged Green when he needed crack cocaine to sell.
 
 
 8
 Barham also testified that Johnson was present at a Hardee's restaurant when drugs were exchanged in April 1993. Barham was informed by Green that Green's cousin and partner, Johnson, had some cocaine that Barham could buy. After the meeting at Hardee's, Barham saw Johnson whenever he met with Lott and Green. Barham observed Johnson driving the car when Barham and Green met to make a drug transaction.
 
 
 9
 Barham became a police informant after being arrested in October 1992 on a drug charge. In June 1993 Green informed Barham that a large shipment of crack was expected and that Green needed Barham's help to move the drugs. Barham contacted Green from a telephone in the Greensboro Police Department's office. When Green did not respond to the pager, Barham decided to go to Green's residence.
 
 
 10
 When Barham arrived at Green's house, Green and Johnson were present. Green went into the kitchen while Johnson and Barham talked in the living room. Green reappeared and delivered an ounce of crack cocaine to Barham. Barham broke the crack into two one-half packages and subsequently gave one to the police.
 
 
 11
 That same day, a search warrant was executed at Green's residence. During the search, 156.4 grams of crack cocaine were found under the dishwasher in the kitchen. A pager was recovered from Johnson's belt during a pat-down search. A second pager was found in the living room. A receipt taken during the search indicated that Johnson lived at Green's address. Finally, upon Johnson's arrest, he acknowledged that one of the toothbrushes in the bathroom belonged to him.
 
 
 12
 We will not disturb a verdict unless no rational jury could have found that the prosecution proved the crime charged beyond a reasonable doubt. Glasser v. United States, 315 U.S. 60, 80 (1942). We must view the evidence and all reasonable inferences in the light most favorable to the Government. United States v. Jones, 735 F.2d 785, 790 (4th Cir.), cert. denied, 469 U.S. 918 (1984).
 
 
 13
 To sustain a guilty verdict on charges of conspiracy, the prosecution must prove that a conspiracy existed, that the defendant knew of it, and voluntarily became a part of it. United States v. Brown, 856 F.2d 710, 711-12 (4th Cir.1988). The existence of a conspiracy may be shown by circumstantial evidence from which a jury may reasonably infer conspiratorial agreement from facts and circumstances. United States v. Laughman, 618 F.2d 1067, 1074 (4th Cir.), cert. denied, 447 U.S. 925 (1980).
 
 
 14
 Once a conspiracy is proven, only slight evidence is required to link a defendant to the conspiracy and to convict him of knowing participation in the conspiracy. United States v. Brooks, 957 F.2d 1138, 1147 (4th Cir.), cert. denied, 60 U.S.L.W. 3879 (U.S.1992). The defendant need not know the identities of his co-conspirators or the exact roles they play in the conspiracy. Blumenthal v. United States, 332 U.S. 539, 556-59 (1947). Intent to distribute may be inferred from the quantity of drugs a defendant possesses. United States v. Samad, 754 F.2d 1091, 1096 and n. 12 (4th Cir.1984) (citations omitted).
 
 
 15
 The Government's evidence showed that Johnson was involved with Green and Lott in their drug distribution operation. Johnson went to Yourse's house with Lott and accompanied Lott and Green while they delivered cocaine and collected money. When Yourse inquired of Johnson whether anyone had cocaine for sale, Johnson told Yourse that he would get some cocaine the next day for Yourse. Yourse overheard a conversation in which Johnson discussed the cocaine sales with Lott. Yourse observed Johnson carrying a pistol.
 
 
 16
 Barham's testimony corroborated Yourse's story. Green told Barham that his cousin, Johnson, had some crack for sale. Johnson was present and wearing a pager when Barham purchased an ounce of cocaine from Green's residence on the day that Johnson was arrested. Finally, a receipt recovered during the search revealed that he and Green lived together at the house.
 
 
 17
 The Government was required to prove that Johnson knowingly possessed crack cocaine with the intent to distribute it. The government may prove actual or constructive possession of the controlled substance. United States v. Rusher, 966 F.2d 868, 878 (4th Cir.), cert. denied, 61 U.S.L.W. 3285 (U.S.1992). To establish constructive possession, the Government must show "ownership, dominion, or control over the drug or the premises or vehicle in which it was concealed" either by direct or circumstantial evidence. United States v. Nelson, 6 F.3d 1049, 1053 (4th Cir.1993).
 
 
 18
 Thus, the jury could reasonably have inferred that Johnson was involved in the conspiracy to possess with intent to distribute crack cocaine. The drugs were found in a common area of Johnson's residence. Johnson shared the house with his co-conspirator, Green. Johnson knew about the crack and had discussed its distribution with Yourse. Johnson was present during the drug exchange and was wearing a pager later that day when he was searched.
 
 
 19
 Absent evidence that Johnson had withdrawn from the conspiracy, his involvement in it continued. United States v. Walker, 796 F.2d 43, 49 (4th Cir.1986). Once a conspiracy is established, each coconspirator is equally liable for the substantive offenses committed during the course of and in furtherance of the conspiracy. Pinkerton v. United States, 328 U.S. 640, 646-48 (1946).
 
 
 20
 Although several witnesses gave accounts that were somewhat contrary to the facts recited above, issues of credibility are for the jury to determine and are not properly considered by the district court in ruling on a Fed.R.Crim.P. 29 motion for acquittal. Burks v. United States, 437 U.S. 1, 16 (1978). Thus, because we conclude that a jury reasonably could have found Johnson guilty of the offenses with which he was charged, we affirm the district court's denial of the motion for acquittal. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 
 21
 AFFIRMED.