52 F.3d 322
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Lameechie Mark JOHNSON, Defendant-Appellant.
 No. 94-5021.
 United States Court of Appeals, Fourth Circuit.
 Argued: March 10, 1995.
Decided: April 18, 1995.
 
 ARGUED: Christine J. Saverda, ROYSTON, MUELLER, McLEAN & REID, Towson, MD, for Appellant. John Francis Purcell, Jr., Assistant United States Attorney, Baltimore, MD, for Appellee. ON BRIEF: Lynne A. Battaglia, United States Attorney, Baltimore, Maryland, for Appellee.
 Before WIDENER, WILKINS, and HAMILTON, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Lameechie Mark Johnson appeals from his convictions for possessing with the intent to distribute cocaine, see 21 U.S.C.A. Sec. 841(a)(1) (West 1981), and using or carrying a firearm during and in relation to a drug trafficking crime, see 18 U.S.C.A. Sec. 924(c) (West Supp.1994). Johnson challenges the decision of the district court denying his motion to suppress evidence seized during a search of his bedroom and the sufficiency of the evidence supporting his Sec. 924(c) conviction. Finding no error, we affirm.
 
 I.
 
 2
 On July 22, 1993, agents of the Bureau of Alcohol, Tobacco, and Firearms executed a search warrant upon a 1985 Mercedez Benz, which was parked in a residential area in Baltimore, Maryland. During the search, James Wade approached Special Agent James Tanda and stated that the car belonged to his son, Lameechie Johnson. Wade then motioned Tanda and another agent to follow him across the street to a residence where Johnson was located. Once inside, the agents told Johnson that they suspected him of narcotics trafficking and that they wished to question him. The agents, Wade, and Johnson then went to the dining room, where Tanda informed Johnson of his rights, emphasized that Johnson was not under arrest, and began to question him. During the questioning, Johnson appeared nervous and frequently looked to Wade for guidance. Wade encouraged Johnson to cooperate with the agents.
 
 
 3
 After a short time, Wade left the dining room and went outside to observe the search of the vehicle. Tanda followed Wade outside and requested Wade's permission to search the third floor of the residence, where Johnson's bedroom was located. After Wade indicated a willingness to consent to the search, Tanda asked Wade a number of questions to determine whether Wade possessed the necessary authority to consent to a search of the premises. Wade stated that he owned the house; that the third floor did not have a separate entrance; that Johnson's room was not locked; and that Johnson did not pay rent. Wade stated, "[H]e's my son. He lives here with us.... [I]t's my house, I go in whatever room I want in the house." Wade then signed a consent form in Johnson's presence, again admonishing Johnson to cooperate with the agents. Tanda also learned that Wade was actually Johnson's stepfather, but did not inquire about the duration of their relationship.
 
 
 4
 The agents, Wade, and Johnson proceeded to the third floor, which consisted of a bedroom and a small, unfurnished storage area. Johnson pointed out a .45 caliber semi-automatic rifle in the storage area and two rounds of .45 caliber ammunition on the window sill in the bedroom. Near the bed, the agents found a mirror on which were found cocaine residue and a razor blade; a yellow bag containing $10,901; a bag containing cocaine; two pairs of men's shorts in which were found several plastic bags containing cocaine; a pager; and documents addressed to Johnson at the residence. Under the bed, the agents found a pistol case; several rounds of ammunition; and a box containing bags, stoppers, and razor blades. Johnson was then arrested and taken downstairs.
 
 
 5
 During the search of the bedroom, Tanda noticed that some of the ceiling tiles were askew. The tiles were located over the foot of the bed, in easy reach of a person standing on the bed or on the window sill. Tanda removed the loose tiles and discovered a storage space approximately 30 inches high between the drop ceiling and the actual ceiling. In this space, Tanda found a magazine for a.45 caliber rifle containing 26 rounds of ammunition; a pair of men's shorts in which he found a bag containing a small quantity of cocaine; a .25 caliber semi-automatic pistol; and a large plastic bag containing 17 smaller bags, each of which contained approximately one ounce of cocaine.
 
 
 6
 Johnson was charged in a two-count indictment with possessing with the intent to distribute cocaine and with using or carrying a firearm during and in relation to a drug trafficking crime. Prior to trial, Johnson moved to suppress all of the evidence seized from the bedroom, arguing that Wade lacked authority to consent to the search. At a hearing on the motion, Wade testified that he had told the agents that his authority over the premises was limited and that the third floor bedroom was Johnson's "private domain." Wade further testified that he had been married to Johnson's mother for only one month, although the pair had dated for approximately ten years; that Johnson and his mother had been living at the residence for only seven weeks; that Wade had been living with Johnson and his mother for only one week; and that the name of Johnson's mother, but not Wade's name, appeared on the deed of mortgage to the home. The district court concluded that although Wade did not have actual authority to consent to a search of the premises, Tanda nevertheless could reasonably have believed that Wade had such authority. Therefore, the district court found that Wade had apparent authority to consent to the search of the premises and denied the motion to suppress. After a bench trial, the district court found Johnson guilty of both counts of the indictment.*
 
 II.
 
 7
 Johnson primarily contends that Wade lacked actual or apparent authority to consent to the search of the bedroom, and therefore that the district court erred in denying his motion to suppress. The legal conclusions of the district court regarding suppression are reviewed de novo, while factual determinations are subject to review only for clear error. United States v. Rusher, 966 F.2d 868, 873 (4th Cir.), cert. denied, 113 S.Ct. 351 (1992). We need not decide whether Wade had actual authority to consent to a search of the residence, including the third floor, because at the very least he had apparent authority to do so.
 
 
 8
 Apparent authority to consent to a search exists when, judged by a standard of objective reasonableness, "the facts available to the officer at the moment ... warrant a man of reasonable caution in the belief that the consenting party had authority over the premises." Illinois v. Rodriguez, 497 U.S. 177, 188 (1990) (alteration in original) (internal quotation marks omitted). Thus, the search is valid if the information then available to the agents, if accurate, would have established Wade's actual authority to consent to a search of the premises. See United States v. Welch, 4 F.3d 761, 764-65 (9th Cir.1993). At the time of the search, the information available to Tanda indicated that Wade owned the residence, could enter any room within it, and had common authority over the premises. See United States v. Matlock, 415 U.S. 164, 171 (1974). Thus, we conclude that the search of the residence was reasonable based upon Wade's apparent authority.
 
 
 9
 Johnson separately challenges the search of the drop ceiling, arguing that even if Wade possessed apparent authority to consent to a search of the bedroom that authority did not extend to the "discrete space" of the drop ceiling. "The standard for measuring the scope of ... consent under the Fourth Amendment is that of'objective' reasonableness--what would the typical reasonable person have understood by the exchange between the officer and the [person consenting to the search]?" Florida v. Jimeno, 500 U.S. 248, 251 (1991). Here, the expressed object of the search was the third floor of the residence; Wade placed no limitations on the scope of the search. See id. at 251-52. We therefore conclude that it was objectively reasonable for the agents to search the drop ceiling based on Wade's previous consent to a search of the room.
 
 III.
 
 10
 Johnson also challenges the sufficiency of the evidence supporting his conviction pursuant to 18 U.S.C.A. Sec. 924(c), arguing that the conviction is based on his mere possession of the .45 caliber rifle. Our review of this conviction is limited to the question of whether, viewing the evidence in the light most favorable to the Government, any rational trier of fact could have found guilt beyond a reasonable doubt. United States v. Nelson, 6 F.3d 1049, 1053 (4th Cir.1993), cert. denied, 114 S.Ct. 2142 (1994).
 
 
 11
 Evidence is sufficient to show that an individual used or carried a firearm during and in relation to a drug trafficking crime when "the firearm [was] present for protection and to facilitate the likelihood of success, whether or not it [was] actually used." United States v. Brockington, 849 F.2d 872, 876 (4th Cir.1988). As the district court found, the rifle and ammunition were present and readily accessible to Johnson in the event that he needed to use them to protect the drugs or money. Cf. United States v. Paz, 927 F.2d 176, 178-79 (4th Cir.1991) (evidence sufficient to support Sec. 924(c) conviction when firearm was located under a mattress in bedroom where narcotics and currency were found). Clearly, the facts supported the verdict of guilty beyond a reasonable doubt.
 
 
 12
 Having determined that Johnson's allegations of error are without merit, we affirm his convictions.
 
 
 13
 AFFIRMED.
 
 
 
 *
 The indictment charged Johnson with using or carrying the rifle found in the storage area and the pistol found in the drop ceiling. However, the district court found that Johnson used or carried only the rifle during and in relation to the drug trafficking crime alleged in the indictment. Although the court believed that Johnson used the pistol in relation to the distribution of drugs, it determined that the rifle was the only weapon used when Johnson possessed the narcotics in his room