54 F.3d 774
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Jacqueline HANCOCK, a/k/a Jackie, Defendant-Appellant.
 No. 94-5613.
 United States Court of Appeals, Fourth Circuit.
 Argued April 7, 1995.
Decided May 15, 1995.
 
 ARGUED: Joseph N. Bowman, Alexandria, Virginia, for Appellant. John Nicholas Nassikas, III, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, VA, for Appellee. ON BRIEF: Helen F. Fahey, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, VA, for Appellee.
 Before ERVIN, Chief Judge, and RUSSELL and WILKINS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Jacqueline Hancock appeals her conviction of conspiracy to solicit and to commit murder-for-hire. See 18 U.S.C.A. Sec. 371 (West 1966 & Supp.1995). She challenges only the sufficiency of the evidence supporting her conviction. We affirm.
 
 
 2
 Viewed in the light most favorable to the Government, the facts are as follows. In February 1994, Norman Johnson, an inmate at the Arlington County, Virginia jail, contacted the FBI regarding William Hill, who was incarcerated there while awaiting trial on bank robbery charges. Johnson informed the FBI that Hill--with the assistance of Hancock, a long-time friend--was attempting to hire someone to kill Myrteena Liberty, the primary witness against him in his upcoming trial. Based on this information, the FBI arranged for an undercover agent to pose as a "hit man" who was willing to commit the murder for $2,000. The details of the contemplated murder were planned during the course of several meetings and telephone conversations.
 
 
 3
 On February 21, the undercover agent, Hill, Hancock, and Johnson met in the visitor's room at the Arlington County jail. Johnson testified that while Hill conversed with the undercover agent, Hancock spoke with Johnson, saying in reference to several prior attempts to have the murder committed that she was "tired of putting the money up, trying to get this lady killed, and nothing [was] getting done." Hill directed Hancock to give the undercover agent $500 that she had raised prior to the meeting. The currency was in an envelope on which was written the street address of the bank at which Liberty was employed.
 
 
 4
 Additionally, Hancock participated in at least two telephone conversations by initiating a conference call between herself, the undercover agent, and Hill. And, during a private conversation, the undercover agent inquired of Hill whether Hancock was aware of their plans. Hill replied, "Oh, but she cool ... don't even have to worry about her." During a later meeting between Hancock and the undercover agent, the following exchange was recorded:
 
 
 5
 AGENT: [W]hen do we need it done by?
 
 
 6
 HANCOCK: [Hill] goes to court on the ninth [of March, 1994].
 
 
 7
 ...
 
 
 8
 AGENT: Okay. 'Cause I had talked to him about uh, just scaring her maybe, but uh....
 
 
 9
 HANCOCK: Um hum.
 
 
 10
 AGENT: [H]e hasn't changed his mind on that, right?
 
 
 11
 HANCOCK: Um mmm.
 
 
 12
 AGENT: He don't [sic] want her scared. He wants her taken care of, right?
 
 
 13
 HANCOCK: Um hum.
 
 
 14
 AGENT: Wants her wacked [sic] ... okay. All right. That's no problem. No problem.
 
 
 15
 HANCOCK: ... [A]s far as he heard, ... she's already scared.
 
 
 16
 Moreover, Johnson testified during Hancock's trial that this was not her first effort to assist Hill in locating an individual to murder Liberty. Johnson testified that Hancock had previously raised money to be used as bail for another Arlington County inmate, who would then commit the crime. However, their attempt to have the inmate commit the murder failed because his relatives apparently spent the money rather than posting it for bail. Subsequently, Hill had arranged for Hancock to deliver a sum of money to an individual in the District of Columbia who had agreed to kill Liberty; this attempt failed when the individual was incarcerated on unrelated charges. Johnson further testified that Hill had said that Hancock was growing increasingly frustrated with their repeated failures and that "she was kind of disappointed they couldn't find no one [sic] to ... actually kill this lady."
 
 
 17
 Hancock claims that this evidence was insufficient to convict her of conspiracy to solicit and to commit murder-for-hire. We disagree. Viewing the evidence in the light most favorable to the Government, we are compelled to conclude that a rational trier of fact could have found Hancock guilty beyond a reasonable doubt. See United States v. Nelson, 6 F.3d 1049, 1053 (4th Cir.1993), cert. denied, 114 S.Ct. 2142 (1994). Accordingly, we affirm her conviction.
 
 
 18
 AFFIRMED.