**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                                          No. 97-4003

CHARLES E. HURT,
<u>Defendant-Appellant.</u>

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Marvin J. Garbis, District Judge.
(CR-95-316-MJG)

Submitted: February 3, 1998

Decided: February 24, 1998

Before HALL, NIEMEYER, and MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Robert M. Simels, New York, New York, for Appellant. Lynne A.
Battaglia, United States Attorney, Martin J. Clarke, Assistant United
States Attorney, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Charles E. Hurt was convicted of possession of a firearm by a felon in violation of 18 U.S.C.A. § 922(g)(1) (West Supp. 1997), and sentenced to 180 months imprisonment and three years of supervised release. On appeal, Hurt challenges the district court's denial of his motion to suppress the firearm found in the vehicle Hurt was driving and the sufficiency of the evidence to support his conviction. We affirm the district court's denial of the motion to suppress and the conviction.

This court reviews the district court's factual findings on Hurt's motion to suppress for clear error. See United States v. McCraw, 920 F.2d 224, 227 (4th Cir. 1990). We review the district court's legal conclusions de novo. See United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir. 1989).

After receiving testimony at the suppression hearing, the district court found that when police officers first saw Hurt, he was illegally double-parked and walking away from his vehicle. All three officers saw Hurt carrying a clear, plastic bag that contained yellow and green items; however, the district court concluded that regardless of whether the sighting was sufficient to justify a conclusion that the items were narcotics, the traffic violation alone was sufficient to justify a traffic stop. After being spotted by the police, Hurt returned to his vehicle and moved it a short distance to a legal parking space. The officers then left their police vehicle and approached Hurt's vehicle from the rear. Hurt's car had illegally heavy tint on all of the windows except the front windshield. The court found that as the officers approached the vehicle, two officers saw Hurt through the heavily tinted driver's side window make some movements inside the vehicle, which the officers interpreted as stuffing something between the seats. The third officer, who approached the passenger's side of the vehicle, saw through a similarly-tinted window a shadowy object that was sticking out from beneath the passenger's seat. The first two officers removed and arrested Hurt. At about the same time, the third officer opened the passenger-side door and identified the shadowy object as a firearm, a .380 automatic handgun. An inventory of the car revealed a plastic

bag containing yellow and green capsules that contained heroin. At trial, the district court disavowed some of its prior factual findings, but again concluded that no Fourth Amendment violation occurred.*

Hurt contends that in light of the district court's rejection at trial of portions of the police officers' testimony, the officers lacked reasonable suspicion to stop his vehicle after he moved it to a legal parking space. Hurt also argues that his Fourth Amendment rights were violated when the third officer opened the door of the vehicle and visually inspected the interior to find the drugs and the weapon in plain view.

Hurt admits that the car was double-parked in violation of the state's traffic laws. A temporary stop of a motorist that is supported by probable cause to believe the motorist committed a traffic violation is reasonable under the Fourth Amendment regardless of the police

_____

*At the hearing on the suppression motion, the officer who approached the passenger side of the vehicle testified that he had no problem seeing inside Hurt's vehicle and that he did not notice any tinting on the windows. The officer also testified that he saw what appeared to be the butt of a gun protruding from under the passenger's seat and that he opened the passenger door to better identify and ultimately seize the item. One of the officers who approached the driver's side of the vehicle testified that he saw Hurt stuffing something between the seats and that he saw a plastic bag between the seats with green and yellow items which he believed were capsules containing narcotics.

At the suppression hearing, the only testimony about the tinting of the windows came from a female friend of Hurt, who also testified that she owned the vehicle and allowed Hurt to drive it. She stated that every window in the vehicle was heavily tinted, so much so that the officers could not have seen inside the vehicle, even with the use of a flashlight.

The district court found that the Government met its burden of proving its version of the events by a preponderance of the evidence and denied the motion to suppress. However, at the bench trial, Hurt presented expert evidence that established that all of the windows were tinted except for the front windshield. The expert witness also established and the district court accepted that due to the heavy tinting of the windows, the police officers could not have seen what they claimed to have seen. Thus, the district court modified its findings of fact and upheld its earlier decision to deny the motion to suppress.

3

officer's motivations in making the stop. See Whren v. United States, ___ U.S. ___, 64 U.S.L.W. 4409, 4410-11 (U.S. June 10, 1996) (No. 95-5841). Therefore, the investigative stop was constitutionally permissible. Furthermore, this Circuit has previously stated:

> [W]henever, during a lawful traffic stop, officers are required to approach a vehicle with windows so heavily tinted that they are unable to view the interior of the stopped vehicle, they may, when it appears in their experienced judgment prudent to do so, open at least one of the vehicle's doors and, without crossing the plane of the vehicle, visually inspect its interior in order to ascertain whether the driver is armed, whether he has access to weapons, or whether there are other occupants of the vehicle who might pose a danger to the officers.

United States v. Stanfield, 109 F.3d 976, 981 (4th Cir. 1997), cert. denied, ___ U.S. ___, 66 U.S.L.W. 3085 (U.S. Oct. 6, 1997) (No. 97-8).

The traffic stop at issue occurred in an area of Baltimore known for its open narcotics trafficking and high crime rate. In Stanfield we noted that where there are drugs, there is a great likelihood that guns are also present. See id. at 984. In addition, the Supreme Court has noted that in a high crime area, "the possibility that any given individual is armed is significant." Maryland v. Buie, 494 U.S. 325, 334 n.2 (1990). Furthermore, the officers testified that they were concerned about the possibility of weapons. An inherent danger faced the officers who approached Hurt's vehicle because of the illegally dark window tinting, which prevented the officers from making reliable observations inside the vehicle. See Stanfield , 109 F.3d at 984. In light of these facts, we find that the officers acted reasonably in opening the passenger's door to visually inspect for potential danger. See id. Accordingly, the district court properly denied the motion to suppress.

Hurt next contends that there was insufficient evidence to conclude that he constructively possessed the firearm that was found beneath the passenger's seat. The crux of his argument is that although he was

4

driving the vehicle when the gun was found, he did not own the car or drive it exclusively.

When addressing an insufficiency of the evidence claim, this court will affirm a criminal conviction if, in light of the totality of the evidence presented at trial, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See United States v. Burgos, 94 F.3d 849, 862-63 (4th Cir. 1996) (in banc), cert. denied, 65 U.S.L.W. 3586 (U.S. Feb. 24, 1997) (No. 96-6868); see also Jackson v. Virginia, 443 U.S. 307, 319 (1979). Hurt was charged with possession of a firearm by a felon in violation of 18 U.S.C.A. § 922(g)(1). The elements of that offense are: (1) that Hurt was previously convicted of a crime punishable by imprisonment for more than one year in a court of the United States or a state; (2) that he possessed the firearm; and (3) that the possession was in or affecting interstate commerce. See 18 U.S.C.A. § 922(g). Hurt stipulated to the first and third elements, so the issue in dispute is whether Hurt knowingly possessed the firearm.

Possession of a firearm may be actual or constructive and may be proven by direct or circumstantial evidence. See United States v. Nelson, 6 F.3d 1049, 1053 (4th Cir. 1993). Constructive possession exists when the defendant exercises or has the power to exercise dominion and control over the object in question or the premises or vehicle in which the contraband is concealed. See United States v. Blue, 957 F.2d 106, 107-08 (4th Cir. 1992).

Hurt was the sole occupant and driver of the automobile. The gun was found with the butt end protruding from beneath the passenger's seat, clearly visible and accessible from the driver's seat. Hurt's female friend, the registered owner of the vehicle, testified that Hurt frequently used the vehicle. She testified that he had used the vehicle off and on during the previous month and had possession of it for the two days preceding his arrest. She also denied that the handgun was hers. There was additional testimony from Hurt, his brother, and the expert witness who installed the tint on the windows, that linked Hurt to the car. Furthermore, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt in light of the facts that: (1) Hurt was in an area of Baltimore known as an open air drug market; (2) he was seen carrying yellow and green capsules

5

that turned out to contain heroin; (3) guns are frequently used to protect drug dealers from the dangers inherent in drug dealing, <u>Stanfield</u>, 109 F.3d at 984; and (4) the officers found $806 on Hurt's person after the arrest, including 115 five-dollar bills, which is consistent with the sale of $10 capsules of heroin. <u>See Jackson</u>, 443 U.S. at 319. Therefore, the evidence was sufficient to establish that Hurt constructively possessed the firearm.

Accordingly, we affirm the district court's denial of the motion to suppress and we affirm Hurt's conviction. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court, and oral argument would not aid the decisional process.

<u>AFFIRMED</u>

6