**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                              No. 96-4686

GREG STEVEN COOKE,
Defendant-Appellant.

Appeal from the United States District Court
for the Middle District of North Carolina, at Winston-Salem.
James A. Beaty, Jr., District Judge.
(CR-95-160-6)

Argued: March 6, 1998

Decided: April 23, 1998

Before WILKINSON, Chief Judge, MICHAEL, Circuit Judge, and
CLARKE, Senior United States District Judge for the
Eastern District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** William L. Osteen, Jr., ADAMS & OSTEEN, Greens-
boro, North Carolina, for Appellant. Paul A. Weinman, Assistant
United States Attorney, Winston-Salem, North Carolina, for Appel-
lee. **ON BRIEF:** A. Wayland Cooke, HARRISON, NORTH,
COOKE, & LANDRETH, Greensboro, North Carolina, for Appellant.
Walter C. Holton, Jr., United States Attorney, Winston-Salem, North
Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Greg Steven Cooke was convicted in the district court of conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846. The district court sentenced Cooke to 188 months imprisonment. Cooke appeals his conviction and sentence. We affirm.

I.

The conspiracy in which Cooke participated involved the shipment of cocaine by co-conspirators from Florida to Cooke in North Carolina. The conspiracy began sometime in 1989 or 1990 and lasted until at least July 10, 1995, the date of the Indictment. In the conspiracy, cooperating co-conspirators Richard William Goodale and Robert William Curley traveled from Florida to North Carolina and delivered cocaine to Cooke at his various residences. Curley's girlfriend, Donna Ponzio, also accompanied Curley on several of these trips.

At trial Goodale, Curley, and Ponzio testified for the government. Goodale testified that he made approximately five trips to Cooke's house in Mt. Airy, North Carolina and one to Cooke's apartment in Winston-Salem, North Carolina to deliver cocaine.

Curley initially supplied Goodale with the cocaine for delivery to North Carolina. But upon learning that Goodale had started using cocaine, Curley began accompanying Goodale on deliveries to protect his cocaine shipments.

Curley testified that he personally made six trips to North Carolina to deliver cocaine. On one of these trips, he delivered five kilograms of cocaine to Cooke. Ponzio's testimony generally corroborated Curley's testimony concerning the delivery of cocaine to Cooke on one occasion.

2

Taking the witness stand in his own defense, Cooke testified that he met Goodale through his involvement on the tractor pull circuit in the Southeast. Cooke, however, denied ever buying cocaine from Goodale. Cooke also testified that he knew Curley and Ponzio, but he again denied ever purchasing any drugs from them.

The jury convicted Cooke of conspiracy to distribute cocaine. Cooke filed a motion for a new trial pursuant to Fed. R. Crim. P. 33. He claimed that the district court erred in not declaring a mistrial because Curley allegedly gave surprising and perjurious testimony. Secondly, he claimed that the district court erred in not granting a new trial based upon various Brady violations. The district court denied his motion.

At sentencing, the district court found that Cooke had given perjurious testimony at his trial and increased Cooke's offense level 2 points for obstruction of justice. USSG § 3C1.1. The district court also held Cooke accountable for 15-50 kilograms of cocaine in computing his base offense level pursuant to Sentencing Guideline § 2D1.1.

Cooke claims four assignments of error on appeal: first, he asserts that the district court committed reversible error in refusing to grant his motion for a mistrial or a new trial, based upon the alleged perjurious testimony of Curley; second, Cooke alleges that the district court committed reversible error in denying his motion for a new trial based upon the government's failure to produce certain exculpatory or impeachment information as required by Brady v. Maryland, 373 U.S. 83 (1963); third, Cooke argues that the district court erred in enhancing his sentence for obstruction of justice; and fourth, Cooke asserts that the trial court erred in holding him accountable for 15-50 kilograms of cocaine.

II.

Cooke first claims that the district court erred in denying his motion for a mistrial based upon the testimony of William Curley. Cooke alleges that Curley gave perjurious testimony that incriminated Cooke and the district court abused its discretion in not granting his motion for a mistrial or a new trial.

3

A.

Curley testified at trial about various trips that he made from Florida to North Carolina to deliver cocaine. On direct examination by the government, Curley testified that he made a total of six trips to North Carolina and met Cooke on two of those trips. Curley made no mention of cocaine being exchanged between himself and Cooke on either of these two meetings.

On cross examination, Curley again described six trips to North Carolina. Contrary to his direct examination, however, he described three meetings with Cooke. During one of those meetings, Curley testified, he distributed five kilograms of cocaine to Cooke at Cooke's residence.

On redirect examination, the government probed further into the number of meetings with Cooke. Curley again testified that on one occasion he distributed drugs to Cooke. The Assistant United States Attorney then asked for a bench conference at which he informed the district judge and Cooke's counsel that this was the first time he had heard of the meeting with Cooke where five kilograms were exchanged. The Assistant United States Attorney went on to explain that Curley "has never mentioned this trip before, not to me and not to any of the agents who were with me during the course of the interviews" with Curley.[1]

The trial judge then excused the jury and a hearing was held on how to deal with Curley's testimony. Cooke's counsel proposed that they be allowed to conduct a voir dire of Curley outside the jury's presence. The trial judge denied that motion. Then, Cooke's counsel moved that Curley's testimony be stricken as inherently incredible. The trial judge also denied that motion. The judge decided to instruct the jury on how to deal with inconsistent statements made by witnesses and to allow Cooke to examine the investigators who con-

_____

[1] The Assistant United States Attorney admitted at oral argument that this quoted statement is not entirely accurate because the attorney was not present during all of Cooke's interviews and could not conclusively say what Cooke may and may not have mentioned at the interviews he did not attend.

4

ducted pretrial interviews with Curley. Unsatisfied, Cooke's counsel made a motion for a mistrial which the trial judge denied. Following his conviction, Cooke again argued this point in a Rule 33 motion for a new trial.**2**

The trial continued with Cooke having the opportunity to conduct a recross of Curley and an examination of the two investigators who interviewed Curley. On recross, Curley maintained that he was fairly certain that he told the investigators about the drug deal with Cooke. During the examination of the investigators, each acknowledged that Curley's testimony had not been consistent with what he had told them during their various debriefings.

B.

Cooke argues that the district court abused its discretion in not declaring a mistrial or granting a new trial because Curley's testimony was unfairly surprising and perjurious. A new trial should be granted for surprise and perjurious testimony when: (1) the court is reasonably satisfied that the testimony given by a material witness is false; (2) without the false testimony, the jury might have reached a different conclusion; and (3) the party seeking the new trial was taken by surprise by the testimony and was unable to meet it. United States v. Wallace, 528 F.2d 863, 866 (4th Cir. 1976); United States v. Nero, 733 F.2d 1197, 1202 (7th Cir. 1984). We review a district court's refusal to declare a mistrial or to grant a new trial based upon perjured testimony for abuse of discretion. See United States v. Dorlouis, 107 F.3d 248, 254, 257 (4th Cir.), cert. denied, 117 S.Ct. 2525 (1997); United States v. Arrington, 757 F.2d 1484, 1486 (4th Cir. 1985).

Cooke's argument fails because he cannot prove that Curley gave false testimony. The district court noted that there were inconsistencies in Curley's testimony but never concluded that the testimony was

_____

**2** Cooke wanted to put the Assistant United States Attorney on the witness stand to testify about what Curley said at the pretrial interviews. The district court refused to allow this and correctly held that it would be sufficient for Cooke to call the two government investigators as witnesses since they attended all of the pretrial meetings and the Assistant United States Attorney did not.

5

false. To the contrary, the district court acknowledged the inconsistencies and addressed the situation by instructing the jury about how to deal with inconsistent testimony by a witness.**3**

Cooke argues that the testimony was perjurious because it was inconsistent with the statements given to the investigators and the Assistant United States Attorney during debriefings before trial. Yet, this inconsistency proves nothing more than the presence of an inconsistency. See United States v. Griley, 814 F.2d 967, 971 (4th Cir. 1987) (stating that "[m]ere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony"). The district court recognized the lack of proof that Curley gave false testimony and correctly left the issue for the jury to resolve. See United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982) (stating that "[w]here there are conflicts in the testimony, it is for the jury and not the appellate court to weigh the evidence and judge the credibility of the witnesses").

Nor is it apparent that Cooke was unable to meet or counter the alleged surprise testimony of Curley. Cooke had the opportunity to extensively cross examine Curley about his testimony. Cooke also called the two investigating officers as witnesses and interrogated them about Curley's inconsistent statements. Consequently, Cooke had ample opportunity to discredit or counter Curley's testimony.

In sum, Cooke fails to meet his burden of proving that Curley's testimony was false or that he was unable to meet it at trial.

III.

Next Cooke asserts that the district court committed reversible error in refusing to grant his motion for a new trial based upon the failure of the United States to produce certain exculpatory information as required by Brady v. Maryland, 373 U.S. 83 (1963).

Under Brady and its progeny, the prosecution's failure to disclose

_____

**3** Cooke does not challenge the district court's instruction to the jury about inconsistent witness testimony.

"evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." <u>United States v. Ellis</u>, 121 F.3d 908, 914 (4th Cir.) (quoting <u>Brady</u>, 373 U.S. at 87), <u>cert. denied</u>, 118 S.Ct. 738 (1998); <u>accord Kyles v. Whitley</u>, 514 U.S. 419, 431 (1995); <u>Hoke v. Netherland</u>, 92 F.3d 1350, 1356 (4th Cir.), <u>cert. denied</u>, 117 S.Ct. 630 (1996). Evidence is "favorable" not only when it would tend to exculpate the accused, but also where it can be used to impeach government witnesses. <u>Ellis</u>, 121 F.3d at 914; <u>accord United States v. Trevino</u>, 89 F.3d 187, 189 (4th Cir. 1996); <u>United States v. Bagley</u>, 473 U.S. 667, 682 (1985). However, where the prosecution fails to disclose evidence favorable to the accused, such evidence is material "only where there exists a `reasonable probability' that had the evidence been disclosed the result of the trial would have been different." <u>Ellis</u>, 121 F.3d at 914 (quoting <u>Wood v. Bartholomew</u>, 516 U.S. 1, 5 (1995)); <u>see Kyles</u>, 514 U.S. at 434. A "reasonable probability" of a different result is shown when the government's failure to disclose evidence "undermines confidence in the outcome of the trial." <u>Ellis</u>, 121 F.3d at 914; <u>Kyles</u> 514 U.S. at 434.

Cooke argues that the government withheld exculpatory evidence consisting of motel records[4] and the notes of one of the investigating agents, Detective Lambe.[5] The withholding of this evidence, he claims, precluded his counsel from properly cross examining government witnesses and deprived the jury of the ability to evaluate the witnesses' credibility.

---

[4] Cooke claims that he was not aware of the motel records until he called one of the investigators on direct examination. At that time the investigator testified that he had reviewed hotel records which did not corroborate the testimony of Goodale, Curley, and Ponzio concerning where they stayed during their trips to North Carolina. Cooke alleges that the motel records were exculpatory because they were inconsistent with the government witnesses' testimony.

[5] Although Cooke received the report of one of the agents who conducted interviews with Curley, Cooke asserts that he did not receive Detective Lambe's report concerning those interviews. Cooke alleges that Detective Lambe's report contained information different from that of the other investigator and could have been used to impeach government witnesses at trial.

In reviewing Cooke's motion for a new trial, the district court considered this evidence to be Brady material, but concluded that the failure to disclose it prior to trial did not undermine the jury's verdict. The court found that based upon the totality of the circumstances, the availability or non-availability of the information did not create a reasonable probability of a different verdict by the jury.

We reject Cooke's argument that the district court abused its discretion in denying Cooke's motion for a new trial. The district court found that the failure to disclose the motel records and Detective Lambe's notes prior to trial was not material since the government's failure to disclose the evidence pretrial did not undermine confidence in the outcome of the trial. At trial the defense thoroughly cross examined the government's witnesses and exposed the inconsistencies in their testimony and the motel records and Detective Lambe's notes. The jury had ample opportunity to observe the witnesses' demeanors and evaluate their credibility, as shown by the inconsistencies in their testimony and the motel records and Detective Lambe's notes. In considering this matter, the district court properly concluded that the jury had before it the inconsistencies between the government witnesses' testimony and the undisclosed evidence. The district court found that the requested evidence, if disclosed pretrial, would not have made a material difference with regard to the cross examination of the government witnesses. Accordingly, we conclude that the district court when considering the totality of the circumstances did not abuse its discretion in holding that failure to disclose this information pretrial did not undermine confidence in the outcome.

IV.

We next review Cooke's claim that the trial court committed reversible error in enhancing his sentence for obstruction of justice pursuant to Sentencing Guideline § 3C1.1. [6] He argues first, that the enhancement was improper in his case, second, that this enhancement

_____

[6] Since Cooke was sentenced on August 14, 1996, the 1995 Guidelines apply. See United States v. Rogers, 897 F.2d 134, 138 n.9 (4th Cir. 1990) ("[T]he district court is to consider the guidelines and policy statements of the Commission that are in effect on the date the offender is sentenced.").

8

violates the intent of the Sentencing Guidelines, and third, that it is unconstitutional in its application.

A.

Guideline § 3C1.1 provides for a two-level increase if the defendant "willfully obstructed or impeded . . . the administration of justice during the investigation, prosecution, or sentencing of the instant offense." USSG § 3C1.1. In United States v. Dunnigan, the Supreme Court held that upon a proper determination that the accused has committed perjury at trial, an enhancement of sentence is required by the Sentencing Guidelines. 507 U.S. 87, 98 (1993). Moreover, commentary to § 3C1.1 indicates that an enhancement is warranted when a defendant commits perjury. USSG § 3C1.1, comment. (n.1). Perjury is listed as one type of conduct to which this enhancement specifically applies. Id. § 3C1.1, comment. (n.3).

To determine the elements of perjury, the Supreme Court in Dunnigan relied upon the federal criminal perjury statute, 18 U.S.C. § 1621. The Court held that a witness testifying under oath or affirmation violates this statute if she gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory. Dunnigan, 507 U.S. at 94.

To avoid the enhancement of sentence for every accused who testifies at trial and is convicted, the Supreme Court specifically addressed situations where defendants object to a sentence enhancement resulting from their trial testimony. In such situations,"[t]rial courts must review the evidence and make independent findings necessary to establish a willful impediment to, or obstruction of, justice, or an attempt to do the same, under the federal definition of perjury." Dunnigan, 507 U.S. at 95. It is preferable for a district court to address each element of the alleged perjury in a separate and clear finding. Nevertheless, it is also sufficient if the court makes a finding of an obstruction of, or impediment to, justice that encompasses all of the factual predicates for a finding of perjury. Id.

To obtain the enhancement, the government must prove by a preponderance of the evidence the elements of perjury or facts constitut-

9

ing an obstruction of justice. See United States v. Smith, 62 F.3d 641, 646 (4th Cir. 1995); United States v. Nelson, 6 F.3d 1049, 1054 (4th Cir. 1993), cert. denied, 511 U.S. 1131 (1994). Whether Cooke obstructed justice by committing perjury is a factual determination made by the sentencing court which we review for clear error. See United States v. Murray, 65 F.3d 1161, 1165 (4th Cir. 1995); United States v. Brooks, 957 F.2d 1138, 1148 (4th Cir.), cert. denied, 505 U.S. 1228 (1992).

On cross examination by the Assistant United States Attorney, Cooke testified in his own defense, and the following exchange occurred:

> Q Did you ever buy any drugs from Dicky Goodale or Bill Curley or Donna Ponzio?
>
> A No, sir.
>
> Q Did you ever accept delivery of drugs from any of them?
>
> A No, sir.
>
> Q Did you ever give them any money for drugs?
>
> A No, sir.
>
> Q Have you told the ladies and gentlemen here everything you know about these fellows?
>
> A Yes, I have.

J.A. at 570. Contrary to Cooke's testimony, Goodale, Curley, and Ponzio each testified that drugs were delivered to Cooke. Based upon this conflicting testimony, the district court concluded that Cooke provided materially false information and committed perjury by denying his participation in the drug conspiracy.

Cooke objected to this enhancement at sentencing and the district court, in compliance with Dunnigan, made the requisite findings

10

regarding the propriety of the enhancement for obstruction of justice. The record reflects, and the district court properly found, that Cooke wilfully gave false testimony concerning a material matter during his trial, and that this false testimony was not made as a result of confusion or mistake. The evidence which the court accepted as credible indicated that there were transactions in which money was transferred by Cooke to either Goodale or Curley. In exchange, Cooke accepted drug deliveries from either Goodale or Curley. Ponzio witnessed the exchange of money and drugs between Cooke and Curley on one occasion. These factual findings are supported by the record and are not clearly erroneous. They point directly to the conclusion that Cooke committed perjury. Thus, we conclude that the district court did not err in enhancing Cooke's sentence for obstruction of justice.

B.

Next, Cooke challenges his obstruction of justice enhancement on policy grounds. Cooke asserts that Congress intended for the Sentencing Guidelines to bring uniformity in sentencing by narrowing the wide disparity in sentences imposed for similar criminal offenses committed by similar offenders. See USSG Ch.1, Pt.A, intro. comment. He claims that application of this enhancement raised his offense level from 34 to 36, which increased his minimum sentence from 151 months to 188 months, given his Criminal History Category of I. This is a 37 month increase based on obstruction of justice. He compares this 37 month increase to that of a hypothetical offender with the same criminal history who commits perjury in a fraud trial involving $50,000, but only receives an increase in his minimum sentence of 4 months for the act of perjury.

Cooke's argument fails under its own logic. As he argues, the Sentencing Guidelines call for similar sentences for similar offenses committed by similar offenders. See USSG Ch.1, Pt.A, intro. comment. Cooke fails to appreciate, however, that he is not similar to an offender who commits perjury in a fraud trial involving $50,000. That offender has an underlying offense level based on fraud involving $50,000 while Cooke has an underlying offense level based upon conspiracy to possess and distribute cocaine. This fact alone makes Cooke dissimilar from his hypothetical fraud offender, and thus, he should receive a different sentence.

11

C.

Lastly, Cooke claims that an enhancement for perjury under § 3C1.1 is unconstitutional, in violation of the Equal Protection Clause. Similar to his policy argument made above, Cook claims that application of § 3C1.1 results in similarly situated defendants receiving a wide range of sentences for the crime of perjury. His argument is that a two-point enhancement for perjury will increase the sentence of an offender with a high base offense level more than it will increase the sentence of an offender with a low base offense level.

An equal protection constitutional claim may be raised when the punishment one receives bears no relation to the crime committed. See McCleskey v. Kemp, 481 U.S. 279, 306-08 (1987). Here, however, the method of punishment for obstruction of justice bears a significant relation to the crime. As the Ninth Circuit found in addressing this identical issue, "it seems entirely rational to punish perjury more severely when the underlying crime out of which the defendant is trying to lie his way is more serious." United States v. Rubio-Topete, 999 F.2d 1334, 1341 (9th Cir. 1993). Such a punishment scheme is rational and under the facts of this case, not unreasonably excessive. Accordingly, we hold that the enhancement given to Cooke for obstruction of justice based on his perjury is not unconstitutional under the Equal Protection Clause.

V.

Finally, we address whether the trial court erred for holding Cooke accountable for 15-50 kilograms of cocaine in computing his base offense level. Our review is governed by two principles. United States v. Goff, 907 F.2d 1441, 1444 (4th Cir. 1990). First, it is incumbent upon the government to prove the quantity of drugs involved by a preponderance of the evidence. Id.; United States v. Powell, 886 F.2d 81, 85 (4th Cir. 1989), cert. denied, 493 U.S. 1084 (1990). Second, since calculation of the quantity of drugs is a factual determination, the finding of the district court will be upheld unless clearly erroneous. Goff, 907 F.2d at 1444; United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir. 1989).

12

Cooke argues that the district court incorrectly based its calculation of his base offense level upon the testimony of unreliable witnesses. Specifically, he asserts that the testimony of Goodale, Curley, and Ponzio was inherently unreliable because the evidence showed that they were drug addicts with inaccurate memories. Cooke maintains that at sentencing, the district court failed to make findings that their testimony had the requisite indicia of reliability and erroneously relied on its previous ruling that the witnesses' testimony was not inherently unreliable.[7] To support his argument, Cooke relies on cases from the Third and Eighth Circuits which instruct district courts to receive with caution and scrutinize the testimony of drug addict-informants against the "sufficient indicia of reliability" standard. United States v. Miele, 989 F.2d 659, 667-668 (3rd Cir. 1993); see United States v. Simmons, 964 F.2d 763, 776 (8th Cir.), cert. denied, 506 U.S. 1011 (1992).

In this Circuit there is generally no requirement that district courts make separate findings of "sufficient indicia of reliability" at sentencing hearings regarding the testimony of drug addict-informants. All a district court must do is make factual findings (under the preponderance of the evidence standard) concerning the evidence that is presented before it. Implicit in those factual findings is a finding of the reliability of the evidence upon which the findings are based.

The district court did not commit clear error in its factual findings concerning the amount of drugs attributable to Cooke. The same judge who sentenced Cooke presided over his trial. At the sentencing hearing, the judge and counsel reviewed the trial transcript. The judge then made specific factual findings concerning which drug quantities had been proven by a preponderance of the evidence to be attributable to Cooke. The court also excluded from this calculation those amounts of drugs that had not been proven by a preponderance of the evidence to be attributable to Cooke. Based on our review of the evidence in the case, the district court did not commit clear error in this assessment.

_____

[7] In denying Cooke's Motion for a New Trial prior to sentencing, the district court concluded that the testimony of Goodale, Curley, and Ponzio was not inherently unreliable. J.A. at 777.

13

VI.

Since none of Cooke's challenges merit reversal of his conviction or sentence, we affirm.

<u>AFFIRMED</u>

14