**UNITED STATES of America, Appellee,**

v.

**Louis J. POMPONIO, Jr., et al., Appellants.**

**No. 74–1690.**

United States Court of Appeals, Fourth Circuit.

Argued Jan. 9, 1975.

Decided June 3, 1975.

Albert J. Ahern, Jr., Bailey's Crossroads, Va., for appellants Peter Pomponio and Paul Pomponio.

Alan Y. Cole, Washington, D. C. (Lee A. Schutzman and Cole & Groner, Washington, D. C., on brief), for appellants Louis J. Pomponio, Jr., and Charles J. Piluso.

Thomas K. Moore, Asst. U. S. Atty. (David H. Hopkins, U. S. Atty., Frank W. Dunham and Justin W. Williams, Asst. U. S. Attys., on brief), for appellee.

Before RUSSELL, FIELD and WIDENER, Circuit Judges.

WIDENER, Circuit Judge:

Peter, Paul, and Louis Pomponio are brothers who were business associates involved in the development, construction, and operation of high-rise office and apartment buildings in the District of Columbia-Northern Virginia area. Charles Piluso was their attorney. The four were indicted on September 24, 1973 on several counts of fraud and conspiracy to commit fraud. The indictment was superseded by another Grand Jury indictment on November 14, 1973. As required by the trial court and prior to trial, the government dropped four counts. The case went to trial on January 21, 1974. At the close of the government's case, the court merged various counts and renumbered them. Count 1 charged mail fraud in violation of 18 U.S.C. § 1341; count 2 charged that the defendants caused a victim to travel interstate in execution of a scheme to defraud him in violation of 18 U.S.C. § 2314; count 3 charged that the defendants used telephone communication in interstate commerce in executing the scheme to defraud in violation of 18 U.S.C. § 1343; count 4 charged interstate transportation of a security obtained by fraud in violation of 18 U.S.C. § 2314; and count 5 charged interstate transportation of counterfeit securities in violation of 18 U.S.C. § 2314.

Defendants Piluso and Louis Pomponio were convicted on all five counts. Defendants Peter Pomponio and Paul Pomponio were found guilty of counts 4 and 5, found not guilty on counts 2 and 3;

and the jury hung on count 1, which was then dismissed by the court as to Peter and Paul Pomponio.

The defendants raise numerous issues, including newspaper publicity during the trial prejudicing the jury, and insufficiency of the indictment on count 5. Since we reverse and remand for a new trial on the basis of the failure of the district court to inquiry of the jury concerning prejudicial publicity during the trial which may have reached them, we reach none of the multitude of other issues raised except the sufficiency of count 5 of the indictment.

The defendants were businessmen in the area who had been involved in several large building projects, and the collapse of their considerable businesses amid charges of fraud attracted publicity in the press. As might be supposed, as this trial progressed, articles appeared on a regular basis reporting its progress, two of which are in issue here. The jury was not sequestered during the trial, but were instructed each evening before they left for the night to read, listen, or look at nothing concerning the case outside the courtroom.

On January 24, 1974, an article appeared in *The Washington Post* which had a headline stating "Rent Signatures Held Forgery" and a smaller headline stating "U. S. Official Testifies Against Pomponios." The body of the article contained information that was not available to the jury in court. It disclosed that the current trial was for only the first 10 of 113 counts against the Pomponios stemming from the disintegration of their conglomerate "in 1972 under tax and money manipulation investigations." It also reproduced a comment by a "court officer" who "apparently bored by the lengthy arguments over the fine legal points, grumbled afterward, 'You'd think they were trying Al Capone'."

On the morning the article appeared, the attorneys presented it to the court and requested that the court inquire of the jury as to whether they had read the article. The court refused the request on the basis that the jury had been admonished on the evening before and every evening not to read any such articles.

On January 30, 1974, the second article at issue appeared in *The Washington Post.* It was headlined "Spat Ends Pomponio Defense" and was continued on another page with the headline "Pomponio Defense Rests as Two Refuse to Testify." The article contained an account of some testimony and facts surrounding the defendants. More importantly, it had an account of events that occurred in the courtroom while the jury was absent. The article related that the attorneys for defendants Peter and Paul Pomponio requested that defendants Piluso and Louis Pomponio be called as witnesses, and that they had refused. It also contained an abbreviated account of an exchange between the court and counsel.

On the morning this second article appeared, the defense lawyers presented it to the court and asked that the jury be polled to determine whether any of them had read the article. Again, the court refused.[1]

The defendants argue that both articles were prejudicial in nature and that there was an obvious possibility that the jury had read them. They argue that it was error for the court not to question the jury as to those articles brought to the court's attention. We agree. United States v. Hankish, 502 F.2d 71 (4th Cir. 1974).

▬ The articles dealt with matters that could not have been raised before the jury. The refusal to testify of two of the defendants on the request of the

---

1. There was apparently a third article that the defense wanted the court to inquire about. The request took place in chambers off the record, but the record does reflect that the court may have refused it. Since no attempt was made to place that article in the record, we do not consider whether the denial, if any, was proper.

other two was not a proper matter to bring to the jury's attention. Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). The existence and number of other pending charges could not have been raised even if the defendants had chosen to take the stand. United States v. Pennix, 313 F.2d 524 (4th Cir. 1963). See Lovely v. United States, 169 F.2d 386 (4th Cir. 1948). We express no opinion on the comparison of this trial to that of Capone, but note that the statement read in context probably expresses merely the thought that there was an uncalled for overemphasis on the importance of the proceeding. Information denied the jury in the courtroom due to its prejudicial nature is still prejudicial although it may reach the jury through news accounts. Marshall v. United States, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959).

■ The district court did not find that the articles were not prejudicial. Rather, it relied on its admonitions to the jury to refrain from reading any articles concerning the trial of the defendants. While we agree that a jury is presumed to follow the court's instructions, when "highly prejudicial information may have been exposed to the jury, the court must ascertain the extent and effect of the infection, and thereafter, in its sound discretion, take appropriate measures to assure a fair trial." Hankish, p. 77. Such articles must be brought to the court's attention, as these were by the attorneys, to enable it to make an initial determination as to whether the information is in fact prejudicial, and, of course, nonprejudicial articles do not require such an inquiry to the jury by the court. See United States v. Wenzel, 311 F.2d 164, 170 (4th Cir. 1962), Hankish, p. 77. Here, however, both articles contained prejudicial matter which the jury had no right to consider. When they were brought to the attention of the district court, it should have inquired how many, if any, of the jurors had read them, and if any had, taken such further steps as are required by Hankish. Its failure so to do requires a new trial.

The defendants raise in this court for the first time the contention that count 5 [2] is fatally defective for failing to charge an offense under 18 U.S.C. § 2314. Specifically, they point out that it fails to allege "unlawful or fraudulent intent," [3] citing United States v. Beard, 414 F.2d 1014 (3rd Cir. 1969).

■ When an indictment does not accurately and clearly allege all the ingredients of which the offense is composed, we have held it to be insufficient. Hale v. United States, 89 F.2d 578 (4th Cir. 1937). Since we reverse and remand this case for a new trial, and are of opinion that count 5 of the indictment is insufficient on its face, we do not reach the questions of whether the objection comes too late, or the defect was cured by instructions, and direct that count 5 of the indictment be dismissed without prejudice to the government to reindict and retry if it chooses. United States v. Ball, 163 U.S. 662, 672, 16 S.Ct. 1192, 41 L.Ed. 300 (1896); Beard, p. 1017.

Reversed and remanded for a new trial.

---

2. Count 5 (formerly count 13):

"THE GRAND JURY FURTHER CHARGES:

"That on or about the 22nd day of June, 1971, in the Eastern District of Virginia, Louis J. Pomponio, Jr., Peter Pomponio, Paul Pomponio, and Charles J. Piluso did transport and cause to be transported in interstate commerce from Arlington, Virginia to Philadelphia, Pennsylvania, falsely made, forged, altered and counterfeited securities, that is, Certificates Nos. 1, 2 and 3 of the Zachary Taylor Corporation certifying that as of the 5th day of January 1970, LOUIS J. POMPONIO, JR., PETER POMPONIO and PAUL POMPONIO, respectively, were each the owners of ten (10) fully-paid and unassessable shares of the capital stock of said corporation knowing the same to have been falsely made, forged, altered and counterfeited.

"(Violation of Title 18, United States Code, Sections 2314 and 2)"

3. "Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities or tax stamps, knowing the same to have been falsely made, forged, altered, or counterfeited . . . .." 18 U.S.C. § 2314.