UNITED STATES of America, Appellee,

v.

Linwood GRAY, Appellant.

UNITED STATES of America, Appellee,

v.

Harry L. STALEY, Appellant.

Nos. 85–5063, 85–5113.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 5, 1985.

Decided April 22, 1986.

Fred Warren Bennett, Federal Public Defender (Kathleen M. Gallogly, Asst. Federal Public Defender, Harry J. Trainor, Jr., Greenanm Walker, Steuart & Meng, on brief), for appellants.

Robert B. Green, Sp. Asst. U.S. Atty. (Catherine C. Blake, U.S. Atty., on brief), for appellee.

Before MURNAGHAN and CHAPMAN, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

HAYNSWORTH, Senior Circuit Judge:

In 1979 a federal grand jury in the District of Columbia indicted the defendant Gray on fifty-two counts alleging narcotics and income tax offenses. After trial, with a number of other co-defendants, Gray was acquitted of the narcotics charges and convicted of income tax offenses. He was sentenced to five years imprisonment.

Thereafter, Gray's common law wife transferred the house in which she, Gray and their child lived to Gray's lawyer, Kenneth Robinson. Allegedly, Gray also transferred a substantial amount of cash to Robinson, and Robinson borrowed $45,000 on the security of the house. Allegedly, these transactions were intended, in part, to effect payment of Robinson's fee for his representation of Gray in the 1979 suit. Otherwise, the alleged intent was to conceal some of Gray's assets from the Internal Revenue Service.

Later, Robinson conveyed the house to the defendant Staley.

While Gray was in prison serving his 1979 sentence, there were several communications from him to Robinson in which he allegedly threatened Robinson's life if Robinson did not continue permitting Gray's wife and child to occupy the house without payment of rent and, later, if he did not transfer the house to Staley.

This led to an indictment of Gray and Staley in the District of Maryland on charges of conspiracy to extort and conceal property in violation of 18 U.S.C.A. § 371 (1982) and of concealment of property from the Internal Revenue Service in violation of 26 U.S.C.A. § 7206(4) (1982). The indictment also charged Gray with two substantive extortion offenses in violation of 18 U.S.C.A. § 875(b) (1982).

We now reverse the conviction and remand for a new trial.

I.

On the morning of the second day of the trial in Baltimore, the Baltimore Sun and the Washington Post published articles reporting the proceedings in court during the first day. The Washington Post article also reported that Gray had been "acquitted of masterminding a $30 million dollar Amsterdam-to-New York heroin ring." It also stated that the 1979 income tax evasion conviction resulted from his failure to report "illicit heroin income in the late 1970's."

At the opening of court on the second day of the trial, defense counsel informed the court of the existence of these articles and requested the judge to question the jurors to determine whether any of them had read the articles. Though the judge had not read the article in the Washington Post, he refused to question the jurors. He thought it enough to repeat his earlier admonition to them not to read or listen to any publicity about the case.

• The rule is settled in this circuit that where "highly prejudicial information may have been exposed to the jury, the court must ascertain the extent and effect of the infection, and thereafter, in its sound discretion, take appropriate measures to assure a fair trial." *United States v. Hankish*, 502 F.2d 71, 77 (4th Cir.1974); *see United States v. Crowell*, 586 F.2d 1020, 1024 (4th Cir.1978), *cert. denied*, 440 U.S. 959, 99 S.Ct. 1500, 59 L.Ed.2d 772 (1979); *United States v. Jones*, 542 F.2d 186, 194 (4th Cir.), *cert. denied*, 426 U.S. 922, 96 S.Ct. 2629, 49 L.Ed.2d 375 (1976); *United States v. Pomponio*, 517 F.2d 460, 462–63 (4th Cir.), *cert. denied*, 423 U.S. 1015 (1975).

When the problem arises, the trial judge should first determine whether the information to which the jury may have been exposed gives rise to a "substantial reason to fear prejudice." *Hankish*, 502 F.2d at 77; *see Aston v. Warden, Powhatan Correctional Center*, 574 F.2d 1169,

1172 (4th Cir.1978); *Jones,* 542 F.2d at 194. Information is prejudicial if it is substantially adverse to a defendant, has not been presented to the trial jury in court and is not properly admissible in the trial. *Crowell,* 586 F.2d at 1024; *Jones,* 542 F.2d at 195. Here, the trial judge did not make that determination.

■ It seems clear to us, however, that the Washington Post article contained prejudicial information.

The statements that Gray had been charged, though acquitted, with having been the head of a thirty million dollar heroin importation ring and had been convicted of income tax evasion because he failed to report his illicit drug profits was inflammatory. Although the jury necessarily was aware of the 1979 trial, the United States could not properly present to it information about the nature and extent of drug offenses of which Gray had been acquitted or the source of the unreported income upon which the income tax evasion conviction was based. The language of the article depicted Gray as an evil man far beyond anything that the fact of the 1979 income tax fraud conviction would imply. It was prejudicial to the defendants.

■ Once it has been found that a jury may have been exposed to prejudicial publicity, inquiry must be made to determine the existence of actual exposure. *Pomponio,* 517 F.2d at 463; *Hankish,* 502 F.2d at 77. Here, however, by declining to question the jurors, the trial court failed "to lay open the extent of the infection." *Hankish,* 502 F.2d at 77. Without information about the existence or the extent of actual exposure to the prejudicial information, the trial court was unable to exercise its discretion to "take appropriate measures to assure a fair trial."

Repetition of the admonition not to read or listen to reports about the case was insufficient to obliterate the prejudice if some of the jurors had already read the article in the Washington Post. *Pomponio,* 517 F.2d at 463.

## II.

■ There was also probable prejudice in the trial court's failure to control Gray's former lawyer, Robinson, during his testimony as a prosecution witness after having been immunized against charges based on any federal criminal tax violations related to the filing of his personal or corporate returns between 1979 and 1982. Though scolded by the judge for doing so, he repeatedly ranged far from the questions put to him. In the process he made numerous prejudicial statements about Gray's past bad conduct.

Robinson may have some difficulty in supplying simple and direct answers to questions put to him, but upon retrial, we think that rapidly escalating sanctions— first admonition, then a fine, then jail— would be calculated to curb his garrulousness.

REVERSED AND REMANDED.