**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                No. 97-4704

MELVIN SUMLER, a/k/a Clever,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                No. 97-4705

TRAMMEL LEWIS,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                No. 97-4706

LESLIE BROCKINGTON, a/k/a Les,
Defendant-Appellant.

Appeals from the United States District Court

for the Eastern District of Virginia, at Richmond.
James R. Spencer, District Judge.
(CR-96-116)

Argued: May 4, 1998

Decided: June 26, 1998

Before WILKINSON, Chief Judge, WILKINS, Circuit Judge, and BLAKE, United States District Judge for the District of Maryland, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Steven D. Benjamin, Richmond, Virginia, for Appellant Sumler; Douglas Patrick McGee, Richmond, Virginia, for Appellant Lewis; Augustus S. Hydrick, Jr., for Appellant Brockington. Nicholas Stephan Altimari, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee. **ON BRIEF:** Betty Layne DesPortes, Richmond, Virginia, for Appellant Sumler. Helen F. Fahey, United States Attorney, James B. Comey, Assistant United States Attorney, Robert E. Trono, Special Assistant United States Attorney, Richmond, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Melvin Sumler, Trammel Lewis, and Leslie Brockington were convicted of conspiracy to distribute heroin in violation of 21 U.S.C. § 846, and possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1). Sumler was also convicted of carrying a firearm in relation to a drug trafficking crime, 18 U.S.C. § 924(c)(1), and possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1). Sumler appeals his convictions; Lewis and Brockington appeal both

2

their convictions and sentences. Finding each of the defendants' contentions without merit, we affirm the judgment of the district court.

I.

Sumler, Lewis, and Brockington were participants in a heroin distribution conspiracy operating in Richmond, Virginia. Sumler purchased large quantities of heroin and then resold it to others, who would then break the heroin down for distribution and sale in smaller quantities. Both Lewis and Brockington purchased heroin from Sumler and sold it in small quantities to users on the street.

Officers in the Richmond Police Department's Narcotics Unit began an investigation of the heroin distribution conspiracy in 1994. At the invitation of the department, the United States Drug Enforcement Agency (DEA) later joined the Richmond effort. The officers focused their investigation on Sumler -- also known as "Clever" -- because they suspected him as the main heroin supplier in North Richmond. The officers interviewed persons arrested in North Richmond on heroin charges, set up surveillance in the area, and conducted undercover buys. At trial, the United States proved its conspiracy charge against Sumler through the testimony of numerous witnesses. They recounted how Sumler received his heroin, to whom he sold it, and the magnitude of purchases made from him during the conspiracy.

The United States also offered evidence recovered during a June 12, 1996 search of a truck driven by Sumler. On that day, the officers received a call from one of their informants alerting them to the fact that Sumler was expected to receive a heroin shipment later that day. Detective Potter of the Richmond Police Department arranged to have several officers monitor Sumler's conduct that afternoon to corroborate the informant's tip. The officers eventually followed Sumler to a convenience store on the south side of Richmond from which Potter observed Sumler emerge with a black bag. After Sumler left the store's parking lot, his truck was pulled over by the Richmond police. In a subsequent search, the police discovered the black bag, which was found to contain 417.4 grams of heroin, a black backpack with approximately $1,900, and a handgun.

3

At trial, witnesses connected Lewis and Brockington to Sumler, explaining how each defendant had described the heroin they sold as "Clever's dope." Sumler's supplier, Mousa Mozeb, also testified that Sumler had warned him to stop supplying Brockington, as he was Sumler's customer. Numerous witnesses testified to purchasing heroin from Lewis and Brockington. The government also presented direct evidence of controlled purchases made from Lewis and Brockington. Troy Travers, a confidential informant cooperating with the police, made two such purchases from Lewis and one from Brockington.

Sumler, Lewis, and Brockington were charged in a superseding indictment with conspiracy to distribute heroin and possession with intent to distribute heroin. Sumler was also charged with two firearm-related crimes. After a four-day jury trial, the three were convicted on all counts. Sumler was sentenced to a total of 384 months imprisonment plus five years supervised release, Lewis to 240 months imprisonment plus ten years supervised release, and Brockington to 360 months imprisonment plus eight years supervised release. Each now appeals.

II.

Sumler, Lewis, and Brockington all contend that the district court's voir dire with respect to two jurors was insufficient to uncover potential juror bias or partiality. During the voir dire, the district judge asked whether any juror had a family member involved in the use or abuse of narcotics. One juror indicated she had a daughter who seven years prior had been involved with cocaine. The district judge asked her whether, in light of that experience, she thought she could be objective and fair to both sides in the case. The juror responded, "I think so." Another juror indicated she had a brother who became involved in drugs during Vietnam. The district judge asked her the same question, to which she responded, "I can be fair. I do know how dangerous they are from my experience." The district judge then explained how a juror must be able to be objective, to listen to all the evidence, and to assess that information fairly. When asked if she could do that, she responded, "Yes." The defendants challenge the district court's refusal to further question either of the two jurors.

4

Federal judges are accorded ample discretion in conducting the voir dire, and specifically in determining what questions should be asked. Mu'Min v. Virginia, 500 U.S. 415, 423-24 (1991); United States v. Lancaster, 96 F.3d 734, 738-39 (4th Cir. 1996) (en banc), cert. denied, 117 S. Ct. 967 (1997). As the Supreme Court has explained:

> Despite its importance, the adequacy of voir dire is not easily subject to appellate review. The trial judge's function at this point in the trial is not unlike that of the jurors later on in the trial. Both must reach conclusions as to impartiality and credibility by relying on their own evaluations of demeanor evidence and of responses to questions.

Mu'Min, 500 U.S. at 424 (quoting Rosales-Lopez v. United States, 451 U.S. 182, 188 (1981) (plurality opinion)). Thus, we review a district judge's refusal to ask certain questions during voir dire only for abuse of discretion. United States v. Barber, 80 F.3d 964, 967 (4th Cir.) (en banc), cert. denied, 117 S. Ct. 198 (1996).

The defendants' challenge is directly foreclosed by precedent. In United States v. Hines, 943 F.2d 348, 352-53 (4th Cir. 1991) (per curiam), a juror indicated she was aware of the effect drugs have on society because of her employment at a chemical dependency unit. As in Sumler's trial, the district judge in Hines asked whether she could put that experience aside and judge the case based on the evidence presented at trial. She responded, "I think so." Id. at 353. We found that the mere fact that a juror expresses a general opinion about drugs followed by a statement that she "thinks" she can weigh the evidence impartially is insufficient to require the juror to be excused. Id. Similarly, we see no reason why the expressions of the two jurors in Sumler's case should have raised concern. As in Hines, the district judge in Sumler's trial was in the best position to assess the demeanor of the two jurors and the credibility of their responses to his questions. The judge concluded that each juror could be trusted to decide the case objectively and fairly, and therefore decided no further questions were necessary. Accordingly, we hold that the voir dire was sufficient and that the district court did not abuse its discretion in refusing to ask further questions of the jurors.

5

III.

A.

Before trial, Sumler moved to suppress the evidence recovered in the search of the truck he was driving June 12, 1996. The district court denied the motion. On appeal, Sumler renews his objections to the search, arguing the police lacked probable cause. Pursuant to the automobile exception, the police could conduct a warrantless search of the truck Sumler was driving if they had probable cause to believe it contained the heroin. See, e.g., California v. Acevedo, 500 U.S. 565, 579 (1991).

Considering the totality of the circumstances, as we are instructed to do by Illinois v. Gates, 462 U.S. 213, 238 (1983), we have no trouble concluding that the officers had probable cause to believe Sumler was transporting heroin in his vehicle. The confidential informant told the police that he had learned from his girlfriend that her sister, who had transported heroin for Sumler in the past, was delivering heroin that day. Both women were unaware that the informant was cooperating with the police. Sumler was expected to wait at his ice cream shop in North Richmond. Meanwhile, the woman making the delivery would leave the heroin somewhere in Richmond and afterwards contact Sumler to tell him the location. Finally, Sumler would "go and check out the heroin."

Detective Potter and his fellow officers corroborated most of the informant's tip. The police surveilled Sumler while he waited at his store and observed a woman fitting the description of the girlfriend's sister approach him. Soon thereafter Sumler departed in a black truck. After making one stop in an area of frequent heroin trafficking, Sumler proceeded to drive in an erratic manner to a convenience store on the south side of Richmond. Sumler once made a prolonged stop on a street where there was no traffic, continually changed speeds, and detoured through an apartment complex rather than driving a direct route. He eventually backed his truck up in front of the store, and emerged soon after with a black bag in his hands. When Sumler was ultimately pulled over, Potter spoke to him outside the truck and explained his suspicion that Sumler was transporting heroin. According to Potter, Sumler provided evasive answers to his questions and

6

appeared "really agitated and very nervous." The police then searched his car and discovered the heroin, money, and handgun.

Under the totality-of-the-circumstances test, "[a]n important factor in determining whether an informant's report establishes probable cause is the degree to which it is corroborated." United States v. Lalor, 996 F.2d 1578, 1581 (4th Cir. 1993); see United States v. Miller, 925 F.2d 695, 698 (4th Cir. 1991). Indeed, corroboration of an informant's predictions can provide the basis for crediting the tip, even if it consists of hearsay. Gates, 462 U.S. at 244-45. By the time the police searched the truck Sumler was driving, they had independently corroborated most of the informant's tip. Combined with their own observations of Sumler's behavior that day and their knowledge of Sumler's heroin trafficking practices generally, the corroborated tip surely gave the police probable cause to believe that Sumler was transporting the heroin the informant said was being delivered that day.

Sumler argues, however, that because the informant's tip was triple hearsay, the police could not guarantee the reliability of the original source of the information. This argument ignores the Court's opinion in Gates. In that decision, the Court rejected any rigid "reliability" tests for probable cause in favor of the totality-of-the-circumstances analysis. Id. at 238. Indeed, although the tip the police received in Gates was an anonymous letter, the Court held that the police's independent corroboration of much of that letter provided a substantial basis for crediting the hearsay. Id. at 244-45. Because the informant's tip here also was substantially corroborated by the police, we reject Sumler's reliability objection.

As for Sumler's argument that the informant stated only that Sumler would "check out" the heroin, we think he scrutinizes the substance of the tip too closely. Because the informant had told the police that the heroin shipment was destined for Sumler, we think it only natural that the police would interpret the informant's tip to mean that Sumler would actually receive and transport the heroin. Even if that were not a natural understanding of the tip, the police surely had probable cause to believe Sumler possessed the heroin once they corroborated the tip and observed Sumler emerging from the convenience store with the black bag.

7

B.

Sumler next maintains that the United States violated his proffer agreement. Before trial, Sumler made an information proffer to the government as part of plea negotiations; the government promised in return not to use his statements against him. During the proffer session, Sumler admitted that the bag he carried out of the convenience store to the truck on June 12, 1996, was the black bag which held the heroin -- not the black backpack later discovered in the truck which contained the money. Detective Potter, however, originally recorded in his report that he saw Sumler carrying a black <u>backpack</u> out of the store. Sumler therefore asserts that Potter's trial testimony that he saw Sumler with the black <u>bag</u> constituted use of Sumler's admission. He maintains that Potter's testimony could only have been based on knowledge of Sumler's admission.

The basic flaw in Sumler's argument is that his admission was never actually used against him. Potter had an obvious independent source for his testimony regarding the black bag-- his own observations. Moreover, this source of knowledge was already available to Potter when Sumler made his admissions to the government. <u>See</u> <u>United States v. McHan</u>, 101 F.3d 1027, 1036 (4th Cir. 1996) (immunity not implicated when evidence derived from independent source), <u>cert. denied</u>, 117 S. Ct. 2468 (1997). Potter never related Sumler's admission to the jury, nor did he testify that his basis of knowledge was Sumler's own admission. Instead, Potter testified at trial as to his own observation of the events of June 12, 1996. The district court itself found that Potter testified from his own independent recollection, and we may not disturb that finding unless it is clearly erroneous. <u>Id.</u>; <u>United States v. Jones</u>, 542 F.2d 186, 199 (4th Cir. 1976). Upon review of the record, we fail to discern such an error.

C.

Sumler next argues that the district court erred by failing to conduct an inquiry into potential jury exposure to prejudicial information. After the close of the first day of trial, the Assistant United States Attorney (AUSA) and Sumler's counsel had a courtroom conversation concerning Potter's appearance on the stand. Apparently, the AUSA indicated his incredulity that defense counsel could conduct a

8

tough cross-examination of Potter when it was already known that Sumler had admitted carrying the black bag out of the convenience store. At that point, defense counsel noted a juror standing in the doorway of the jury room. The district judge responded only by informing the parties that he always gives an instruction to the jury not to consider anything outside of the court proceedings. Sumler now contends the district court erred by not conducting an inquiry into the juror's possible exposure to this information.

In United States v. Hankish, 502 F.2d 71, 77 (4th Cir. 1974), we held that when "prejudicial information may have been exposed to the jury, the court must ascertain the extent and effect of the infection, and thereafter, in its sound discretion, take appropriate measures to assure a fair trial." We have followed this rule in numerous decisions since Hankish. See, e.g., United States v. Gray, 788 F.2d 1031, 1032-33 (4th Cir. 1986); United States v. Pomponio , 517 F.2d 460, 462-63 (4th Cir. 1975); Jones, 542 F.2d at 194-97. The district court failed to conduct such an inquiry in this case, choosing instead to rely on its instruction to the jury that it not consider anything outside of the court proceedings. We have twice held, however, that reliance on such an admonition is plainly insufficient. Pomponio, 517 F.2d at 463; Hankish, 502 F.2d at 77. We explained in Hankish that "we cannot explore other curative devices" when the district judge fails "to lay open the extent of the infection." Id.  at 77.

We hold, however, that the district court's failure to do so here was not reversible error. See United States v. Sanders, 962 F.2d 660, 672 (7th Cir. 1992) (holding failure not automatically reversible error and inquiring into prejudice); United States v. Perrotta, 553 F.2d 247, 251 (1st Cir. 1977) (applying harmless error analysis). Even had the juror heard -- and believed -- the AUSA's statement regarding Sumler's admission, it was no more than cumulative evidence of Sumler's actual possession of the heroin as he emerged from the convenience store. Even had the black bag containing that heroin first been discovered during the search of the truck Sumler was driving, the jury still would have had overwhelming evidence establishing Sumler's possession.

Possession may be actual or constructive. United States v. Nelson, 6 F.3d 1049, 1053 (4th Cir. 1993). "To establish constructive posses-

9

sion the government must show ownership, dominion or control over the drug or the premises or vehicle in which it was concealed." Id. (emphasis added). Although Sumler did not own the truck he was seen driving that day -- it was registered to his brother -- his dominion or control over the vehicle was certainly proven beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 24 (1967). Officers observed Sumler driving the truck alone to the convenience store on the south side of Richmond, and apprehended him in the truck soon after he left that store. See United States v. Crockett, 813 F.2d 1310, 1316 (4th Cir. 1987) (person driving car in which contraband substance is concealed found to exercise control or dominion). The officers also observed the truck parked in front of Sumler's store all afternoon prior to his trip to the south side. Finally, Potter testified that he had seen Sumler driving the truck at least fifteen to twenty times during the previous three weeks. Given the evidence before the jury on Sumler's possession of the heroin, the error here was plainly harmless.

D.

Sumler finally contends that the district judge deprived him of a fair trial by making negative comments during the trial with respect to his trial counsel. Sumler alleges six instances where the district judge reprimanded his attorney in an unnecessarily harsh tone.* Sumler contends that these comments conveyed the impression to the jury that the judge was partial to the prosecution. We disagree.

Under Fed. R. Evid. 611(a), the district court has a duty to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to . . . avoid needless consumption of time." After the first day of trial, the district judge expressed displeasure with the laborious pace of the witness examinations and admonished counsel for both sides not to ask questions that

_____

*At one point, after Sumler's counsel unnecessarily repeated the response of the witness, the district judge stated:"That's what he said, Mr. Carpenter. You are just going to drive me to distraction. He says, `I don't recall.' Your next statement is, `You don't recall.' Don't be a myna bird, just ask a question. This constant repetition of what he says isn't getting us anywhere. Come on."

10

had already been answered. Several of the court's comments that Sumler has highlighted on appeal dealt with this issue of trial counsel's needless repetition of matters that had earlier been covered. And the court's remaining comments pertained to other relevant issues of courtroom administration. We have previously held that "even a stern and short-tempered judge's ordinary efforts at courtroom administration . . . do not establish bias or partiality." United States v. Castner, 50 F.3d 1267, 1274 (4th Cir. 1995) (internal quotation marks omitted) (citation omitted). We have reviewed the trial transcript and conclude that, as isolated comments amidst over 950 pages of testimony, the district court's remarks could have had no impermissible effect. More importantly, the judge's comments conveyed no impression of his view of the evidence. See United States v. Wilson, 118 F.3d 228, 237-38 (4th Cir. 1997) (no abuse of discretion when district court "did not impose its own view of the evidence on the jury"). Accordingly, we find no abuse of discretion by the district court and reject Sumler's challenge.

IV.

A.

Both Lewis and Brockington challenge the sufficiency of the evidence supporting their convictions for conspiracy to distribute heroin. They argue initially that the government failed to present any direct evidence of their participation in the conspiracy. Both also point to the fact that many of the witnesses who testified regarding Lewis and Brockington's heroin sales could not connect either to Sumler. Each asserts that the evidence that did suggest they sold Sumler's heroin also supported inferences consistent with innocence on the conspiracy charges. Finally, Lewis maintains that, because the term "Clever's dope" was also understood to signify good heroin, testimony that he sold "Clever's dope" could not conclusively tie him to the conspiracy.

In reviewing the defendants' challenges to the conspiracy verdicts, we must decide only whether "a rational jury could find that the evidence was sufficient to sustain their conspiracy convictions." United States v. Burgos, 94 F.3d 849, 857 (4th Cir. 1996) (en banc), cert. denied, 117 S. Ct. 1087 (1997). Our job is not to reweigh the evidence or determine the credibility of witnesses. Id. at 862-63. The jury

11

already made those judgments and, on those bases, returned a guilty verdict. That verdict "must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser v. United States, 315 U.S. 60, 80 (1942).

Defendants' claims can be reduced to two main contentions: the government's case lacked direct evidence of participation, and the evidence also supported an inference of innocence. Defendants' first argument ignores, however, the settled proposition that both the existence of a conspiracy and a defendant's participation in such conspiracy may be proven by circumstantial evidence. Burgos, 94 F.3d at 858. Upon review of the record, we find substantial evidence connecting both Lewis and Brockington to the heroin distribution conspiracy. In Lewis' case, one witness testified that Lewis described his heroin as "Clever's dope" while another witness stated that Lewis told her he received his heroin from Sumler. Although Lewis challenges the credibility of these witnesses, "determinations of credibility `are within the sole province of the jury and are not susceptible to judicial review.'" Id. at 863 (citation omitted). Witnesses at trial testified both that "Clever's dope" meant good heroin and that it meant heroin supplied by Sumler -- who was also known as Clever. It was for the jury to decide which inference was most credible, if not both.

In Brockington's case, several witnesses supplied the evidence of his connection to Sumler. One witness recalled an incident when he complained to Brockington of the quality of his heroin. Brockington reassured the witness that he would "get with `Clever' and that he would straighten it out." Another witness testified that Brockington told her his heroin was "Clever's dope." And Mousa Mozeb -- Sumler's supplier -- testified that when Sumler learned Mozeb had been selling to Brockington, Sumler ordered Mozeb to stop as Brockington was already Sumler's customer. Cognizant that the circumstantial evidence "need not exclude every reasonable hypothesis of innocence," id. at 858, we easily conclude that a rational jury could find that the evidence was sufficient to sustain Lewis and Brockington's conspiracy convictions.

B.

Brockington also disputes his possession conviction under count nine of the indictment on two grounds. Under that count, Brockington

12

was charged with possessing with intent to distribute, and aiding and abetting another in the distribution of, heroin. He challenges both the sufficiency of the evidence supporting his possession conviction and the timing of the judge's aiding-and-abetting instruction under the same count.

The trial testimony upon which Brockington's possession charge was based related to a controlled purchase made by Troy Travers, a confidential informant. Both Travers and DEA Agent Mark Ross, who accompanied Travers that day and witnessed the transaction, testified at trial. According to Travers, he asked Brockington if he had some heroin. Brockington responded by telling him that "Al's got it" and instructing another person to retrieve the heroin located only a few feet away. This same person then handed Travers the heroin. Travers then gave his money to that person, who in turn transferred it to Brockington. Agent Ross confirmed Travers' testimony by recounting his visual observations of the transaction. Stressing the fact that he never actually held the heroin, Brockington claims that reasonable doubt of his guilt remains. We disagree.

Taken in the light most favorable to the government, Glasser, 315 U.S. at 80, the evidence was more than adequate to convict Brockington. As we have already explained, possession may be actual or constructive, Nelson, 6 F.3d at 1053, and the latter may be established by showing "ownership, dominion or control over the drug." Id. Brockington's dominion and control was conclusively proven by the testimony that he directed the entire transaction and received the money. This evidence provided the government with a solid case of constructive possession. Accordingly, we find Brockington's challenge to be meritless.

Brockington further disputes the timing of the district court's aiding-and-abetting instruction with respect to count nine of the indictment. After the district judge instructed the jury, he asked for objections from either side. The AUSA informed the judge that the court had omitted the aiding-and-abetting charge from the recitation of count nine of the indictment, even though the court had given a general aiding-and-abetting instruction. The district judge therefore informed the jury that the aiding-and-abetting instruction he previously read related only to count nine. Brockington claims this seem-

13

ingly minor act "unjustly spotlighted" him so as to make him appear guilty on that count. We disagree. The district judge's action was necessary to correctly instruct the jury. Properly connecting a jury instruction with the count for which it serves hardly conveys an assumption of guilt to the jury. Thus, it is not surprising that Brockington can point to no decision supporting his argument.

V.

A.

Lewis raises two primary objections to his sentence-- one an alleged error of law, the other of fact. Each of Lewis' contentions relates to the drug quantity contained in the relevant conduct section of his presentence report. In part, the report attributed 150 ounces (4,242.5 grams) of heroin on the basis of Marvin Antonio Lee's claimed purchases from Lewis over a five-month period. The government did not present Lee as a witness at Lewis' sentencing hearing. Lewis nevertheless made a motion to compel the production of the government's notes of a debriefing session with Lee. The district court denied the motion with respect to the notes regarding Lee, but ruled that Lewis would be permitted to call Lee as a witness at the sentencing hearing.

Lewis did not call Lee. The government, however, did call Ronald Johnson -- Lee's codefendant on drug charges in New York -- and accordingly turned over notes of Johnson's debriefing session. At the sentencing hearing, Johnson testified that Lee told him they received their heroin from Lewis. The district court found that Johnson's testimony only partially corroborated Lee's claims in the presentence report. The court therefore attributed only fifty ounces (1,417.5 grams) of heroin to Lewis on the basis of Lee's statements.

Lewis first contends that the district court committed legal error by not ordering the government to produce its notes of Lee's debriefing session. Lewis claims that Fed. R. Crim. P. 26.2 and 32(c)(2), as well as U.S.S.G. § 6A1.3, impose such a disclosure obligation on the government. Lewis' argument, however, is legally baseless.

14

Rules 26.2 and 32(c)(2) concern only the production of statements by "a witness other than the defendant [who] has testified on direct examination." Fed. R. Crim. P. 26.2(a). Because Lee never testified at Lewis' sentencing hearing, he was not a witness covered by the dictates of Rules 26.2 and 32(c)(2). U.S.S.G. § 6A1.3 likewise provides no support for Lewis' argument. That section requires only that "the parties shall be given an adequate opportunity to present information to the court regarding" important factors reasonably in dispute. Id. § 6A1.3(a). To the extent that Lee's drug quantity claims constituted the important factor in reasonable dispute, the district court complied with section 6A1.3 by expressly ruling in its written order that Lewis would be permitted to call Lee at his sentencing hearing. It was Lewis in the end who chose not to do so.

Lewis next contends that the district court incorrectly calculated the drug amounts attributable to him by relying on the vague and unreliable statements of Anthony Everett and Lee, both of which constituted hearsay. Because the district court's findings are of a factual nature, we review them only for clear error. United States v. Love, 134 F.3d 595, 606 (4th Cir. 1998), petition for cert. filed, No. 97-9085 (U.S. May 14, 1998). It is well-established that a district court "`may properly consider uncorroborated hearsay evidence that the defendant has had an opportunity to rebut or explain.'" Love, 134 F.3d at 607 (quoting United States v. Terry, 916 F.2d 157, 160-61 (4th Cir. 1990)). Everett's statements, because they were made under oath before the grand jury, constitute a particularly reliable form of hearsay and were therefore properly relied upon by the district court.

With respect to heroin purchases claimed by Lee, the district court credited his statements only after consulting with its probation officer and witnessing the live testimony of Ronald Johnson. Significantly, the court relied on Lee only to a limited extent, attributing just one-third of the total quantity of heroin Lee claimed to have purchased from Lewis. Lewis nevertheless urges this court to at least remand his case and require the district court to provide an exact explanation of how it chose to attribute fifty ounces on the basis of Lee's claims. We decline. "[T]he Sentencing Guidelines permit estimated amounts based on satisfactory evidence, and such estimates inherently possess a degree of uncertainty." United States v. D'Anjou, 16 F.3d 604, 614 (4th Cir. 1994); see also United States v. Sampson, 140 F.3d 585, 592

15

(4th Cir. 1998) (precise calculations of drug quantities not required). This was certainly a proper case for the use of approximation in determining attributable drug quantities, as the district court decided the relevant presentence report claims were only partially reliable. Reviewing the record, we find no clear error in the district court's necessary estimate.

B.

Brockington also challenges his sentence, contending that the district court erred by not granting him a downward departure. Brockington's appeal is easily dismissed. We have repeatedly held that a district court's decision to deny a downward departure is a nonappealable, discretionary decision. See, e.g., Burgos, 94 F.3d at 876; United States v. Bayerle, 898 F.2d 28, 30-31 (4th Cir. 1990). The only exception to this rule applies when "the refusal to depart downward [was] based on the district court's mistaken view that it lacked the authority to depart." Id. at 31. Here, the district court did not deny Brockington's request because it believed it was legally required to do so. Accordingly, its decision is not appealable and Brockington's challenge must be dismissed.

VI.

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED