JOURNAL ENTRY AND OPINION
Timothy Kaszas has filed an Application to Reopen the judgment in State v. Kaszas (Sept. 21, 1998), Cuyahoga App. Nos. 72546 and 72547, unreported, which modified his sentences, but affirmed his convictions of attempted aggravated murder, felonious assault, improper discharge of a firearm at or into a habitat, having a weapon while under a disability, and possession of criminal tools. The prosecutor filed a Memorandum in Opposition to reopening, and for the reasons that follow, we deny the Application to Reopen.
An application for reopening is required to be filed within ninety days of the journalization of the appellate judgment. App.R. 26 (B) (1). The journalization of the opinion in State v.Kaszas occurred on September 21, 1998. Kaszas filed to reopen on March 14, 2000, clearly beyond the specified time period and in so doing must show good cause for his failure to file his application timely. App.R. 26 (B) (1), (2); State v. Reddick
(1995), 72 Ohio St.3d 88, 647 N.E.2d 784.
In an affidavit accompanying the request for reopening, Kaszas avers that the policies and procedures of the prison that limit access to the law library prevented him from filing a timely application. Prison riots, lockdowns and other library limitations, however, have repeatedly been rejected as constituting "good cause" for untimely filings. State v. Oden
(1996), 74 Ohio St.3d 234, 658 N.E.2d 273; State v. Cloud (Oct. 10, 1995), Cuyahoga App. No. 68439, unreported, reopening disallowed (Oct. 8, 1996), Motion No. 73557; State v. Coleman
(Mar. 3, 1997), Cuyahoga App. No. 70298, unreported, reopening disallowed (June 30, 1998), Motion No. 93796; State v. Larson
(Aug. 13, 1996), Cuyahoga App. No. 63001, unreported, reopening disallowed (Aug. 13, 1996), Motion No. 73462; State v. Travis
(Apr. 16, 1990), Cuyahoga App. No. 56825, unreported, reopening disallowed (Nov. 2, 1994), Motion No. 51073. Thus the application for reopening is denied as untimely filed without good cause.
Notwithstanding our denial of the application as untimely filed without good cause, the principles of res judicata prevent the reopening of Kaszas' appeal. The issue of whether appellate counsel rendered ineffective assistance in an appeal must be raised at the earliest opportunity to do so. State v. Williams
(1996), 74 Ohio St.3d 454, 659 N.E.2d 1253. Otherwise, the doctrine of res judicata may be applied to bar further review in a criminal case of issues which were raised previously or could have been raised previously in an appeal. See, generally, Statev. Perry (1967), 10 Ohio St.2d 175, 226 N.E.2d 104, paragraph nine of the syllabus. Specifically, res judicata may be used to bar claims of ineffective assistance of appellate counsel unless circumstances render the application of the doctrine injust.State v. Murnahan (1992), 63 Ohio St.3d 60, 66, 584 N.E.2d 1204.
In the present matter, Kaszas had a previous opportunity to raise and argue the issue of ineffective assistance of appellate counsel. He was represented by Edward A. Sowinski, Jr. on direct appeal and then obtained new counsel, Maureen A. Sweeney and Stuart J. Banks, to appeal to the Supreme Court of Ohio. He avers in his affidavit in support of his application that new counsel had knowledge of the alleged errors now claimed in the application for reopening. Sweeney and Banks filed a notice of appeal in the Supreme Court of Ohio on October 19, 1998. Any deficiency of Sowinski serious enough to have prejudiced Kaszas' appeal should have been apparent to Kaszas' newly-obtained lawyers after reviewing the appellate decision and file and should have been raised in a claimed appeal of right in the Supreme Court of Ohio. Section 2 (B) (2) (a) (ii), Article IV, Ohio Constitution; S.Ct.Prac.R. II (1) (A) (2); State v. Walker
(Nov. 15, 1999), Cuyahoga App. No. 74773, unreported, reopening disallowed (June 20, 2000), Motion No. 14647. At this earliest opportunity, had new counsel presented a substantial constitutional question with respect to Kaszas' representation in his direct appeal, the Supreme Court of Ohio could have reviewed his appeal. Sup.Ct.Prac.R. III (6) (A). No one supplied any documentation on what issues were raised on appeal to the Supreme Court of Ohio, but on January 20, 1999, the Court denied Kaszas leave to appeal and dismissed it as not involving any substantial constitutional question. State v. Kaszas (1999), 84 Ohio St.3d 1470,704 N.E.2d 578. Because the issue of whether appellate counsel was ineffective either was raised or could have been raised in that appeal to the Supreme Court of Ohio through new counsel, res judicata now bars any further litigation of this claim unless circumstances render the application of res judicata
unjust.
Kaszas asserts in his affidavit accompanying the application that res judicata should not apply since all of his claimed errors are prejudicial. Aside from the fact that our examination in this matter concludes otherwise, see infra, Kaszas' lone averment of prejudice is insufficient to prevent the operation ofres judicata principles. Thus, we find the application of resjudicata appropriate under these circumstances to bar further review of his claims. See State v. Dehler (1995), 73 Ohio St.3d 307,652 N.E.2d 987; State v. Terrell (1995), 72 Ohio St.3d 247,648 N.E.2d 1354; State v. Eskridge (May 24, 1999), Cuyahoga App. No. 73673, unreported, reopening disallowed (Nov. 24, 1999), Motion No. 9162, appeal dismissed (Mar. 16, 2000), Sup.Ct. No. 00-10; State v. Smith (Jan. 29, 1996), Cuyahoga App No. 68643, unreported, reopening disallowed (June 14, 1996), Motion No. 71793.
We also deny the application for reopening because it fails to present a genuine issue as to whether Kaszas was deprived of effective assistance of counsel on appeal. App.R. 26 (B) (5). In making this determination, we apply the two-prong analysis found in Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052,80 L.Ed.2d 674. State v. Reed (1996), 74 Ohio St.3d 534,660 N.E.2d 456. The Strickland standard requires the following:
 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
466 U.S. 687-688, 104 S.Ct. at 2064; see State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373, paragraphs two and three of the syllabus.
Appellate counsel is not necessarily ineffective for failing to raise a claim of error and has no constitutional duty to raise every conceivable assignment of error on appeal. Jones v. Barnes
(1983), 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987; State v.Gumm (1995), 73 Ohio St.3d 413, 428, 653 N.E.2d 253. The key factor in any determination of ineffective assistance of counsel is prejudice, and it is not necessary that a court evaluate whether a lawyer's performance was deficient prior to deciding whether a defendant suffered prejudice. Strickland,104 S.Ct at 2069-70. If an applicant shows on appeal that there was a reasonable probability of success had a particular assignment of error been asserted, then that omission could render his lawyer's assistance constitutionally ineffective. Page v. United States
(C.A.7, 1989), 884 F.2d 300, 302; Reed, 74 Ohio St.3d 534.
Kaszas first contends that Sowinski was ineffective for failing to raise as plain error the ineffectiveness of trial counsel for not objecting to consecutive sentencing on allied and/or lesser included offenses. He did challenge Kaszas' sentencing as error of the trial court rather than as error of the lawyer. This court determined that the claim had merit and modified Kaszas' sentences accordingly. Kaszas, slip op. at 36-38. Further review of this matter is now barred by res judicata principles.
Kaszas next contends that Sowinski was ineffective for neglecting to challenge the effectiveness of trial counsel for failing to call certain witnesses on Kaszas' behalf and for failing to submit medical records during trial. Those issues were raised in the direct appeal, but this court found no prejudicial error based on this assignment, Kaszas, slip op. at 38-39, and, further review of this matter by this court is now barred by resjudicata principles.
As for the medical records, which Kaszas claims would have corroborated testimony given by both the state's and his witnesses, he has failed to demonstrate that the result of his trial would have been different had this cumulative evidence been admitted. Moreover, with respect to both the medical records and the omitted witness' testimony, if either of these circumstances were not apparent in the record, Sowinski would have no duty to pursue any investigation independent of the record since this court in its reviewing capacity is limited to circumstances appearing in the record only. Evidence discovered after a conviction that is pertinent to the conviction may be the subject of a motion for a new trial or a petition for postconviction relief, but the omission of evidence in a direct appeal that is outside the trial court record does not present a genuine issue as to the effectiveness of appellate counsel to warrant the reopening of one's appeal. State v. Russell (May 20, 1996), Cuyahoga App. No. 69311, unreported, reopening disallowed (June 16, 1997), Motion No. 82351; State v. Collins (July 3, 1995), Cuyahoga App. No. 67165, unreported, reopening disallowed (Feb. 10, 1997), Motion No. 77984; see State v. Goney (1995), 72 Ohio St.3d 314,649 N.E.2d 1225.
Kaszas contends in his supporting affidavit that App.R. 26 is vague and therefore unconstitutional because it fails to define what constitutes "good cause" for an untimely filing. This omitted assignment of error in Kaszas' direct appeal cannot form the basis of a claim of ineffective assistance of appellate counsel. The events relevant to App.R. 26 for Kaszas are subsequent to his appellant counsel's representation on appeal. Sowinski had no basis upon which to challenge App.R. 26 on Kaszas' behalf during the course of the appeal and we are unable to find how the addition of this assignment of error would have changed the outcome of his appeal.
If Kaszas intended a direct constitutional challenge of his own to the "good cause" requirement of App.R. 26, we find no merit to this claim as well. "Good cause" is determined on a case-by-case basis depending on the individual circumstances of each applicant. Over time, as courts continue to determine in individual cases what constitutes or what does not constitute "good cause," a general scope of the definition of good cause develops. In the case at bar, the excuse of limited access to the library could apply to nearly all inmates. If good cause were satisfied by such a circumstance, the time requirements of App.R. 26 (B) would be virtually eliminated. See State v. Sweeney (Jan 8, 1999), Montgomery App. No. 16181, 723 N.E.2d 655.
The Supreme Court of Ohio has supplied some guidance as to the "good cause" requirement by stating that:
 Neither Murnahan nor App.R. 26 (B) was intended as an open invitation for persons sentenced to long periods of incarceration to concoct new theories of ineffective assistance of appellate counsel in order to have a new round of appeals. Rather, both were intended to allow the belated presentation of colorable claims that defendants/appellants were prevented from presenting timely by particular circumstances. Lack of effort or imagination, and ignorance of the law, are not such circumstances and do not automatically establish good cause for failure to seek timely relief.
State v. Reddick (1995), 72 Ohio St.3d 88, 90-91, 647 N.E.2d 784;see, e.g., State v. Davis (1999), 86 Ohio St.3d 212,714 N.E.2d 384; State v. Dennis (1999), 86 Ohio St.3d 201, 713 N.E.2d 426;State v. Fox (1998), 83 Ohio St.3d 514, 700 N.E.2d 1253; State v.Winstead (1996), 74 Ohio St.3d 277, 658 N.E.2d 722; State v.Witlicki (1996), 74 Ohio St.3d 237, 658 N.E.2d 275; State v.Tucker (1995), 73 Ohio St.3d 152, 652 N.E.2d 152. In addition, there are numerous decisions from this court that define what constitutes good cause, see, e.g., State v. Lopez (May 24, 1999), Cuyahoga App. No. 74096, unreported, reopening disallowed (May 11, 2000), Motion No. 12480; State v. Keith (Nov. 18, 1991), Cuyahoga App. No. 59558, unreported, reopening disallowed (June 23, 1995), Motion No. 61715, and what does not constitute good cause, see, e.g., State v. Rodgers (Apr. 13, 1992), Cuyahoga App. No. 60254, unreported, reopening disallowed (Sept. 29, 1998), Motion No. 93571; State v. Carroll (June 21, 1993), Cuyahoga App. No. 62747, unreported, reopening disallowed (Sept. 26, 1994), Motion No. 55110. Based upon the numerous court decisions interpreting the "good cause" component of App.R. 26 (B), the lack of a definition of "good cause" in the rule itself does not render the requirement unconstitutionally vague.
Kaszas also argues that App.R. 26 is unconstitutional because "it is vague as to what type of affidavits can be submitted showing ineffectiveness." The rule allows "all supplemental affidavits upon which the applicant relies." App.R. 26 (B(2) (e). This language is not unclear, to the contrary, the rule permits any and all affidavits an applicant wishes to submit upon which he relies when making an application for reopening.
Last, Kaszas contends Sowinski was ineffective for failing to challenge the effectiveness of his trial lawyer for failing to object when the trial judge did not sequester or poll the jury regarding contamination following the dismissal of a juror who lived close to Kaszas' relatives. Kaszas contends in his affidavit that no member of a jury should have contact with a defendant and/or family of a defendant where information could be passed on to other jury members, because such a circumstance would be prejudicial to him.
The portion of the transcript that Kaszas submitted with his application does not support his claim. The juror whom the judge dismissed admitted she lived near Kaszas' relatives, and did not know them or have any contact with them, but was concerned about her safety should the verdict be adverse to Kaszas. (Tr. 718-727). The record provided does not indicate that the juror received threats of any kind which may have been discussed with other jurors or that any other improper contact occurred. The discourse that occurred among the judge, lawyer, and the juror discloses the juror's concern with how she would feel living close to the relatives of a person she helped to convict, assuming a guilty verdict. The judge was reluctant to dismiss her, but eventually, following an off-the-record conference, he replaced the juror with an alternate juror. (Tr. 727-728).
Unlike the jurors in United States v. Pomponio (C.A. 4, 1975),517 F.2d 460, cited by Kaszas, where the jurors may have read articles in a newspaper that were shown to be prejudicial to the defendants, there is nothing in the material Kaszas provided that indicates that the jurors in his trial may have been privy to information prejudicial to him which would have warranted the questioning of other jury members. The Pomponio court, quotingUnited States v. Hankish (C.A. 4, 1974), 502 F.2d 71, 77, stated that "when `highly prejudicial information may have been exposed to the jury, the court must ascertain the extent and effect of the infection, and thereafter, in its sound discretion, take appropriate measures to assure a fair trial.'" Pomponio,517 F.2d at 463. Based upon the information Kaszas provided, had Sowinski assigned the error proposed, the chance of success was very minimal due to the lack of prejudicial material and surely less promising than the assignments of error his lawyer did present in direct appeal, an appeal which resulted in a reduction of Kaszas' sentences.
Accordingly, for all of the above reasons, the Application to Reopen is denied.
JOHN T. PATTON, P.J., AND KENNETH ROCCO, J., CONCUR.
 ______________________ ANNE L. KILBANE, JUDGE